# Exhibit A

# Register of Actions

Filed by Plaintiff/Petitioner
Filed by Defendant/Respondent
Filed by Court

**Case Number:** 2026CV032869
**Case Type:** Injunctive Relief
**Case Caption:** C And C Of Denver v. Philip Morris Usa Inc et al

**Division:** 215
**Judicial Officer:** A. Bruce Jones
**Court Location:** Denver County - District

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| C9854FA07F928 | 09/16/2026 9:15 AM | Joseph Jacob Zonies | Zonies Law LLC | C And C of Denver | Summons | District Court Civil Summons - British American Tobacco, PLC | Public |
| | | | | | Return of Service | Witness Statement of Service in accordance with sub paragraph (b)of Article 10, Hague Convention on the Service Abroad of Judicial andExtrajudicial Documents In Civil or Commercial Matters w/attach to doc | Public |
| N/A (Details) | 09/09/2026 3:27 PM | A. Bruce Jones | Denver County - District | N/A | Order | Order:Moving Defendants' Unopposed Motion for Extension of Time to Respond to Complaint (filed on behalf of Deft Reynolds American INC, ITG Brands LLC, Liggett Group LLC, Liggett Vector Brands LLC, and Peerless Products, LLC) | Public |
| C9D7BD2F6DCF3 | 09/08/2026 4:09 PM | Paul D Swanson | Holland and Hart LLP | Itg Brands LLC | Entry of Appearance | Entry of Appearance | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| 64FD8D5D53FCC | 09/08/2026 3:43 PM | Eliseo R Puig | Arnold and Porter Kaye Scholer LLP | Altria Group Inc | Motion | Moving Defendants' Unopposed Motion for Extension of Time to Respond to Complaint (filed on behalf of Deft Reynolds American INC, ITG Brands LLC, Liggett Group LLC, Liggett Vector Brands LLC, and Peerless Products, LLC) | Public |
| | | | | | Proposed Order | Proposed Order Granting Moving Defendants' Unopposed Motion for Extension of Time to Respond to Complaint | Public |
| 4DF9D391FB12A | 09/08/2026 3:36 PM | Hannah Berry | Holland and Hart LLP | Itg Brands LLC | Entry of Appearance | Entry of Appearance | Public |
| A8AF728933B38 | 09/08/2026 2:30 PM | Maria Gorecki | Kasowitz LLP | Liggett Group LLC, Liggett Vector Brands LLC | Entry of Appearance | Entry of Appearance of Counsel for Liggett Group LLC and Liggett Vector Brands n/k/a JTI Liggett LLC | Public |
| 290D74B67C2A0 | 09/08/2026 2:25 PM | Caitlin McHugh, Michael Douglas Plachy | Womble Bond Dickinson US LLP | Rj Reynolds Tobacco Co, Reynolds Am Inc (more) | Entry of Appearance | Entry of Appearance | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| N/A (Details) | 09/08/2026 11:52 AM | A. Bruce Jones | Denver County - District | N/A | Order | Order:Moving Defendants' Forthwith Unopposed Motion for Extension of Time to Respond to Complaint | Public |
| AD219D49BB842 | 09/04/2026 1:59 PM | Caitlin McHugh, Michael Douglas Plachy | Womble Bond Dickinson US LLP | Rj Reynolds Tobacco Co, Santa Fe Natural Tobacco Co Inc | Entry of Appearance | Entry of Appearance of Michael D. Plachy and Caitlin C. McHugh | Public |
| AE5F048FF9E9E | 09/04/2026 1:22 PM | Eliseo R Puig | Arnold and Porter Kaye Scholer LLP | Philip Morris Usa Inc, Altria Group Inc | Motion | Moving Defendants' Forthwith Unopposed Motion for Extension of Time to Respond to Complaint (filed on behalf of defendants philip morris usa inc, rj reynolds tobacco co and santa fe natural tobacco co inc) | Public |
| | | | | | Proposed Order | Proposed Order Granting Moving Defendants' Forthwith Unopposed Motion for Extension of Time to Respond to Complaint | Public |
| 5B15F5B2E1F92 | 08/26/2026 11:21 AM | Joseph Jacob Zonies | Zonies Law LLC | C And C of Denver | Certificate | Certificate of Compliance per Pretrial Order | Public |
| ABA602D016B70 | 08/24/2026 2:26 PM | Ryan A Williams | Wilson Elser | Peerless Prod LLC | Entry of Appearance | Entry of Appearance | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| D92A2FBE7E850 | 08/20/2026 3:30 PM | Joseph Jacob Zonies | Zonies Law LLC | C And C of Denver | Summons | District Court Civil Summons - ITG Brands, LLC | Public |
| | | | | | Return of Service | Affidavit of Service - Shannon White on behalf of Defendant ITG Brands, LLC | Public |
| | | | | | Summons | District Court Civil Summons - R.J. Reynolds Tobacco Company | Public |
| | | | | | Return of Service | Affidavit of Service - Shannon White on behalf of Defendant R.J. Reynolds Tobacco Company | Public |
| | | | | | Summons | District Court Civil Summons - Santa Fe Natural Tobacco Company, Inc. | Public |
| | | | | | Return of Service | Affidavit of Service - Shannon White on behalf of Defendant Santa Fe Natural Tobacco Company, Inc. | Public |
| | | | | | Summons | District Court Civil Summons - Philip Morris USA Inc. | Public |
| | | | | | Return of Service | Affidavit of Service - Kaity Longstreth on behalf of Defendant Philip Morris USA Inc. | Public |
| | | | | | Summons | District Court Civil Summons - Altria Group, Inc. | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| | | | | | Return of Service | Affidavit of Service - Kaity Longstreth on behalf of Defendant Altria Group, Inc. | Public |
| | | | | | Summons | District Court Civil Summons - Liggett Vector Brands LLC | Public |
| | | | | | Return of Service | Affidavit of Service - Taina Pelham on behalf of Defendant Liggett Vector Brands LLC | Public |
| | | | | | Summons | District Court Civil Summons - Liggett Group LLC | Public |
| | | | | | Return of Service | Affidavit of Service - Taina Pelham on behalf of Defendant Liggett Group LLC | Public |
| | | | | | Summons | District Court Civil Summons - Reynolds American Inc. | Public |
| | | | | | Return of Service | Affidavit of Service - Heather Hughes on behalf of Defendant Reynolds American Inc. | Public |
| 901522AB539B6 | 08/13/2026 3:07 PM | Joseph Jacob Zonies | Zonies Law LLC | C And C of Denver | Certificate | Certificate of Compliance per Pretrial Order | Public |
| D440A8E7ABDEA | 08/07/2026 4:58 PM | Joseph Jacob Zonies | Zonies Law LLC | C And C of Denver | Return of Service | Affidavit of Service - Peerless Products, LLC (w/attach to doc) | Public |

| Filing ID | Date Filed | Authorizer | Organization | Filing Party | Document | Document Title | Document Security |
|---|---|---|---|---|---|---|---|
| D1E21CEA9E16C | 08/07/2026 10:10 AM | Joseph Jacob Zonies | Zonies Law LLC | The City And County of Denver | Complaint w/Jury Demand | Complaint and Jury Demand | Public |
| | | | | | Civil Case Cover Sheet | District Court Civil Case Cover Sheet | Public |
| | | | | | Summons | District Court Civil Summons - Peerless Products, LLC | Public |
| N/A (Details) | 08/07/2026 12:00 AM | A. Bruce Jones | Denver County - District | N/A | Order | PRETRIAL ORDER | Public |
| N/A (Details) | 08/07/2026 12:00 AM | A. Bruce Jones | Denver County - District | N/A | Order | DELAY REDUCTION ORDER | Public |

## Party Information

| Party Name | Party Type | Party Status | Attorney/Paraprofessional Name |
|---|---|---|---|
| Altria Group Inc | Defendant | Active | ELISEO R PUIG (Arnold and Porter Kaye Scholer LLP)<br>PAUL W RODNEY (Arnold and Porter Kaye Scholer LLP) |
| British Am Tobacco Plc | Defendant | Active | N/A |
| C And C of Denver | Plaintiff | Active | JOSEPH JACOB ZONIES (Zonies Law LLC) |
| Itg Brands LLC | Defendant | Active | HANNAH ELIZABETH BERRY (Holland and Hart LLP)<br>PAUL D SWANSON (Holland and Hart LLP) |
| Liggett Group LLC | Defendant | Active | MARIA GORECKI (Kasowitz LLP) |
| Liggett Vector Brands LLC | Defendant | Active | MARIA GORECKI (Kasowitz LLP) |

| Party Name | Party Type | Party Status | Attorney/Paraprofessional Name |
|---|---|---|---|
| Peerless Prod LLC | Defendant | Active | RYAN A WILLIAMS (Wilson Elser) |
| Philip Morris Usa Inc | Defendant | Active | ELISEO R PUIG (Arnold and Porter Kaye Scholer LLP)<br>PAUL W RODNEY (Arnold and Porter Kaye Scholer LLP) |
| Reynolds Am Inc | Defendant | Active | CAITLIN C MCHUGH (Womble Bond Dickinson US LLP)<br>MICHAEL DOUGLAS PLACHY (Womble Bond Dickinson US LLP) |
| Rj Reynolds Tobacco Co | Defendant | Active | CAITLIN C MCHUGH (Womble Bond Dickinson US LLP)<br>MICHAEL DOUGLAS PLACHY (Womble Bond Dickinson US LLP) |
| Santa Fe Natural Tobacco Co Inc | Defendant | Active | CAITLIN C MCHUGH (Womble Bond Dickinson US LLP)<br>MICHAEL DOUGLAS PLACHY (Womble Bond Dickinson US LLP) |

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(720) 865-8301 | DATE FILED<br>August 7, 2026 10:10 AM<br>FILING ID: D1E21CEA9E16C<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | **▲ COURT USE ONLY ▲** |
| **Attorneys for Plaintiff:**<br>Joseph J. Zonies, No. 29539<br>ZONIES LAW LLC<br>3900 Mexico Ave., Suite 300<br>Denver, CO 80210<br>Phone: (720) 464-5300<br>Fax: (720) 464-5357<br>jzonies@zonieslaw.com<br><br>Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)<br>chris@mcintyreschnieders.com<br>Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)<br>noble@mcintyrelaw.com<br>Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)<br>mdesq@mcintyreschnieders.com<br>MCINTYRE SCHNIEDERS<br>6731 W. 121st St.<br>Overland Park, Kansas 66209<br>Telephone: (913) 627-9416<br><br>David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)<br>dgrossman@grossmankelly.com | Case No.:<br><br>Div.: |

GROSSMAN & KELLY, LLP
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

**COMPLAINT AND JURY DEMAND**

The City and County of Denver (hereinafter "Denver") by and through its counsel, hereby submits its Complaint and Jury Demand, and in support thereof states the following:

## I. NATURE OF THE CASE

1. The Philip Morris International website states, "By 2030 there could be more cigarette butts than fish in the oceans."[1]

2. This is an action to recover the costs imposed upon municipalities by the design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating non-biodegradable plastic filters that Defendants have long known, and intended, would be discarded following their ordinary and intended use, thereby resulting in the continual deposition of persistent plastic waste upon municipal property and within municipal stormwater systems and waterways. This unsightly cigarette waste ultimately flows into surrounding streams, rivers and oceans.

3. Plaintiff does not seek to recover for smoking-related disease, addiction, personal injury, healthcare expenditures, or any of the claims historically asserted in tobacco litigation. Instead, Plaintiff seeks to recover for separate and distinct injuries to municipal property, infrastructure, stormwater systems, waterways, public resources, and governmental operations

[1] "PMI is determined to fight the environmental damage caused by plastic and post-consumer waste from our products – particularly cigarette butts."
Reducing plastic litter| PMI - Philip Morris International, accessed July 11, 2026.

resulting from the foreseeable accumulation of discarded plastic cigarette filters throughout the municipality and disgorgement of the economic benefits Defendants derived from the sale and distribution of filtered cigarette products incorporating non-biodegradable plastic filters while externalizing the foreseeable and continuing environmental, operational, infrastructure, stormwater-management, and cleanup costs associated with cigarette filter waste onto Denver and the public.

4. Modern cigarette filters are manufactured primarily from cellulose acetate, a synthetic plastic polymer that does not biodegrade under ordinary environmental conditions. Although exposure to sunlight and weather may cause these filters to fragment into progressively smaller plastic particles, including microplastics, the underlying plastic material persists in the environment and continues to require municipal collection, removal, management, and disposal.

5. The ordinary and intended lifecycle of every filtered cigarette necessarily culminates in the separation and disposal of the cigarette filter immediately following consumption. For decades, Defendants have known that a substantial percentage of those filters are discarded onto streets, sidewalks, parks, public rights-of-way, transit corridors, storm drains, and other public places, where they are transported by wind, precipitation, and stormwater runoff into municipal drainage systems and waterways.

6. The widespread deposition of discarded cigarette filters is neither accidental nor an unforeseeable misuse of Defendants' products. Rather, it is the statistically dominant post-consumption disposal pathway associated with filtered cigarettes and an inherent consequence of the manner in which Defendants designed, manufactured, marketed, and distributed those products.

7. Despite possessing decades of knowledge regarding the environmental persistence of cellulose acetate filters and their predictable accumulation throughout municipal environments, Defendants continued to manufacture and distribute filtered cigarettes incorporating non-biodegradable plastic filters without adopting feasible alternative designs, implementing meaningful product stewardship measures, or otherwise assuming responsibility for the substantial municipal costs generated by their products after consumption. Defendants also knowingly perpetuated the misperception among cigarette users that the plastic filters are bio-degradable and could be disposed of in public places without any significant consequence.

8. As a direct and foreseeable result of Defendants' conduct, municipalities throughout the United States are required to expend substantial public resources investigating, collecting, removing, transporting, managing, and disposing of discarded cigarette filters; maintaining streets, parks, sidewalks, stormwater infrastructure, and waterways affected by filter accumulation; and complying with environmental and stormwater-management obligations arising from persistent plastic pollution.

9. The injuries alleged in this action are continuing in nature. Each filtered cigarette placed into the stream of commerce creates a foreseeable risk that its plastic filter will be discarded onto municipal property or enter municipal stormwater systems, thereby imposing recurring operational, environmental, maintenance, and remediation burdens that continue long after the product has been consumed.

10. The injuries alleged herein do not arise from a single unidentified cigarette filter or an isolated product occurrence. They arise from the continuing and cumulative accumulation of enormous quantities of discarded cigarette filters manufactured, marketed, supplied,

distributed, and sold by Defendants for consumption within Denver. Each Defendant's relevant conduct increased the volume, density, geographic dispersion, and continuing physical presence of discarded cigarette filters upon Denver-owned or maintained property and within Denver's stormwater and drainage infrastructure.

11. Plaintiff alleges that Defendants knowingly externalized the foreseeable costs of managing persistent plastic cigarette filter waste onto municipalities while retaining the economic benefits derived from the manufacture and sale of filtered cigarettes. Plaintiff seeks to recover those municipal costs, obtain equitable and injunctive relief where authorized by law, and require Defendants to bear responsibility for the continuing harms caused by the design and distribution of their products.

## II. PARTIES

### A. Plaintiff

12. Plaintiff, the City and County of Denver ("Denver" or "Plaintiff"), is a consolidated municipal corporation and political subdivision of the State of Colorado organized and existing pursuant to Article XX of the Colorado Constitution.

13. Plaintiff owns, operates, maintains, regulates, and controls extensive public property and municipal infrastructure, including, but not limited to, streets, sidewalks, parks, public rights-of-way, stormwater systems, drainage infrastructure, public facilities, and other publicly owned lands and improvements within its municipal boundaries.

14. Plaintiff is responsible for providing essential governmental services relating to the maintenance, operation, repair, cleaning, and protection of municipal property and infrastructure, including the collection and removal of litter and solid waste, the operation and

maintenance of stormwater systems, and compliance with applicable environmental and stormwater-management requirements.

15. Plaintiff owns or has a proprietary interest in municipal property that is physically invaded and burdened by the continual accumulation of discarded cigarette filters and the resulting persistent plastic waste alleged in this Complaint.

16. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred, and continues to incur substantial expenditures associated with investigating, monitoring, collecting, removing, transporting, handling, disposing of, remediating, and abating discarded cigarette filters deposited throughout its municipal property, infrastructure, drainage systems, and waterways.

17. Plaintiff brings this action in its own municipal, governmental, and proprietary capacities to recover damages, obtain equitable and injunctive relief where authorized by law, and otherwise protect its property, infrastructure, financial interests, and public resources from the continuing harms alleged herein.

18. Denver owns, operates, and maintains a municipal separate storm sewer system ("MS4") that includes streets, curbs, gutters, storm-drain inlets, underground stormwater conveyances, open drainageways, detention and water-quality facilities, channels, and outfalls discharging to Cherry Creek, the South Platte River, and other receiving waters. Denver holds Colorado Discharge Permit System Permit No. COS000001 for stormwater discharges associated with its MS4.

19. Denver is required to implement pollution-prevention, illicit-discharge, municipal-operations, inspection, monitoring, maintenance, public-education, and other

programs intended to reduce pollutants entering the MS4 and receiving waters. Cigarette filters and other tobacco-product waste constitute a recurring component of the litter and pollutant load entering Denver's streets, gutters, storm drains, drainageways, and receiving waters and require Denver to devote personnel, equipment, infrastructure, and financial resources to collection, inspection, maintenance, removal, and regulatory compliance.

20. Denver Revised Municipal Code section 39-17 prohibits littering and dumping within Denver park facilities. Discarded cigarette filters constitute litter and waste within the purposes and protections of that provision when deposited upon Denver parks and recreational property.

21. Denver Revised Municipal Code section 49-553 prohibits the deposit or littering of streets, alleys, and other public places with rubbish, waste, garbage, and other discarded material. Discarded cigarette filters accumulating upon Denver streets, sidewalks, alleys, public rights-of-way, and other public places constitute the type of persistent litter and waste condition addressed by that provision.

22. Denver Revised Municipal Code section 54-130(a) prohibits the deposit or throwing of rubbish, wastepaper, garbage, and other waste from a moving or standing motor vehicle upon highways, streets, alleys, and public places. Cigarette filters are routinely discarded from vehicles and thereafter accumulate upon Denver-owned or maintained property or are transported into Denver's stormwater and drainage infrastructure.

23. Denver Revised Municipal Code section 56-56 prohibits casting or throwing into drains or sewers substances calculated to cause obstruction and prohibits specified deposits, including garbage, subject to stated exceptions. Denver Revised Municipal Code section 56-102

prohibits, among other things, the discharge of polluted water into a storm sewer or watercourse and the placement or permitted placement of garbage or other waste upon public property or in an area under Denver's jurisdiction. Denver Revised Municipal Code section 56-203 restricts development and uses within regulatory floodplains that would result in the disposal of garbage, sludge, waste materials, or other potentially injurious substances. Discarded cigarette filters constitute waste material that is routinely deposited upon public property and transported into, through, or otherwise affects the sewers, stormwater infrastructure, drainageways, watercourses, receiving waters, and floodplain areas protected by those provisions.

24. Chapter 48 of the Denver Revised Municipal Code regulates solid waste, including garbage, rubbish, litter, refuse, and other discarded materials, and authorizes Denver to regulate their collection, storage, transportation, removal, and disposition. Chapter 48 and Denver's implementing solid-waste rules authorize investigation, inspection, notices of violation, orders to comply, administrative citations, removal and abatement measures, and administrative or judicial enforcement, including enforcement pursuant to Denver Revised Municipal Code sections 48-46 and 48-47.

25. Collectively, these provisions establish a comprehensive municipal policy prohibiting the unlawful deposit, disposal, accumulation, and discharge of litter, rubbish, refuse, garbage, and other waste upon parks, streets, sidewalks, alleys, public rights-of-way, public places, sewers, stormwater systems, drainageways, watercourses, receiving waters, and floodplains. They require and authorize Denver to investigate, prevent, remove, remediate, and abate the cigarette-filter conditions alleged herein and establish the public rights, municipal

property interests, governmental responsibilities, and regulatory obligations affected by Defendants' conduct.

26. Denver alleges these provisions as evidence of the nature and unlawfulness of the continuing physical condition affecting Denver property and infrastructure; the public rights interfered with by that condition; Denver's legal responsibility and authority to investigate, prevent, remove, remediate, and abate the condition; the necessity and reasonableness of Denver's response expenditures; and Denver's entitlement to nuisance, equitable, declaratory, injunctive, and abatement relief. Denver does not rely upon these provisions as creating an independent upstream manufacturer cause of action except to the extent expressly authorized by their text and established by the evidence.

**B. Manufacturing Defendants**

27. The Manufacturing Defendants are engaged in the business of designing, manufacturing, marketing, promoting, distributing, and selling filtered cigarette products throughout the United States, including within the State in which Plaintiff is located.

28. At all relevant times, the Manufacturing Defendants designed, manufactured, and placed filtered cigarette products into the stream of commerce with the expectation and intent that those products would be purchased, consumed, and discarded within Plaintiff's jurisdiction.

29. The Manufacturing Defendants selected, developed, and utilized cigarette filters composed primarily of cellulose acetate, a synthetic plastic polymer that persists in the environment under ordinary conditions following disposal.

30. At all relevant times, the Manufacturing Defendants possessed superior knowledge concerning the composition, environmental persistence, foreseeable post-

consumption disposal, and environmental consequences of plastic cigarette filters to that of consumers or Plaintiff.

31. The Manufacturing Defendants have derived substantial revenues and profits from the manufacture and sale of filtered cigarette products throughout the United States, including within Plaintiff's jurisdiction.

32. Upon information and belief, the Manufacturing Defendants knew or reasonably should have known that the ordinary and intended use of filtered cigarettes necessarily results in the separation and disposal of the cigarette filter immediately following consumption, and that a substantial percentage of those filters would be discarded upon public property or transported into municipal stormwater systems and waterways.

33. Despite that knowledge, the Manufacturing Defendants continued to manufacture and distribute filtered cigarettes incorporating non-biodegradable plastic filters without adopting feasible alternative designs, implementing meaningful product stewardship measures, or otherwise assuming responsibility for the municipal costs associated with the accumulation of discarded cigarette filters.

34. Upon information and belief, each Defendant that manufactured, supplied, distributed, or sold filtered cigarettes within Denver introduced substantial quantities of filtered cigarettes incorporating cellulose acetate plastic filters into the relevant market during the period for which Plaintiff seeks relief.

35. The filtered cigarettes manufactured or supplied by each such Defendant were purchased and consumed within Denver, and the resulting discarded filters contributed to the

continuing accumulation of cigarette filter waste upon Plaintiff-owned or maintained property and within Plaintiff's stormwater and drainage infrastructure.

36. Each such Defendant's contribution to the volume of filtered cigarettes sold and consumed within Denver was substantial and was more than negligible, theoretical, or de minimis.

37. Plaintiff will establish each Defendant's contribution through direct and circumstantial evidence, including sales and shipment records, wholesale and retail distribution records, market-participation evidence, tobacco-tax records, governmental and commercial data, physical sampling, brand-identification evidence, litter audits, and expert analysis.

38. Defendants possess or control substantially greater information concerning their historical and current sales volumes, brand distribution, wholesale shipments, retail channels, and geographic market participation than Denver.

39. The Manufacturing Defendants' conduct, individually and collectively, materially contributed to the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality and to the resulting harms alleged in this Complaint.

**1. Philip Morris USA Inc.**

40. Defendant Philip Morris USA Inc. ("Philip Morris") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia.

41. At all relevant times, Philip Morris designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within Colorado and Denver.

42. Philip Morris placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Denver.

**2. Altria Group, Inc.**

43. Defendant Altria Group, Inc. ("Altria") is a corporation organized under the laws of the Commonwealth of Virginia.

44. Altria is the parent company of Philip Morris.

45. Upon information and belief, Altria participated in, directed, approved, coordinated, controlled, or ratified material aspects of the manufacture, marketing, distribution, environmental policy, product strategy, or product-stewardship practices concerning filtered cigarettes sold by Philip Morris.

46. Altria financially benefited from the manufacture and sale of Philip Morris filtered cigarette products, including products sold within Colorado and Denver.

47. Denver seeks to hold Altria liable for its own acts and omissions and does not rely solely upon Altria's ownership of Philip Morris.

**3. R.J. Reynolds Tobacco Company**

48. Defendant R.J. Reynolds Tobacco Company ("R.J. Reynolds") is a corporation organized under the laws of the State of North Carolina with its principal place of business in Winston-Salem, North Carolina.

49. At all relevant times, R.J. Reynolds designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within Colorado and Denver.

50. R.J. Reynolds's filtered cigarette brands sold within the United States include, among others, Newport, Camel, Pall Mall, Lucky Strike, Doral, Misty, and Capri.

51. R.J. Reynolds placed its filtered cigarette products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Denver.

**4. Santa Fe Natural Tobacco Company, Inc.**

52. Defendant Santa Fe Natural Tobacco Company, Inc. ("SFNTC") is a corporation organized under the laws of the State of New Mexico.

53. SFNTC is an active operating subsidiary of Reynolds American Inc.

54. SFNTC manufactures and markets Natural American Spirit cigarettes and other tobacco products within the United States.

55. Natural American Spirit cigarettes are sold and consumed throughout Colorado, including within Denver.

56. At all relevant times, SFNTC designed, manufactured, marketed, promoted, distributed, supplied, or sold filtered Natural American Spirit cigarettes within Colorado and Denver.

57. SFNTC placed Natural American Spirit cigarettes into the stream of commerce with the expectation and intent that they would be purchased, consumed, and discarded within Denver.

58. SFNTC selected, approved, incorporated, and utilized cellulose acetate plastic filters in Natural American Spirit cigarette products.

59. SFNTC derived substantial revenues from the manufacture and sale of Natural American Spirit cigarettes within Colorado and Denver.

60. SFNTC's manufacture and sale of filtered Natural American Spirit cigarettes materially contributed to the accumulation of discarded plastic cigarette filters upon and within Denver-owned or maintained property and infrastructure.

61. Denver's claims against SFNTC arise from SFNTC's own conduct as the direct manufacturer and marketer of Natural American Spirit cigarette products and not merely from its status as an affiliated or subsidiary corporation.

**5. Reynolds American Inc.**

62. Defendant Reynolds American Inc. ("Reynolds American") is a corporation organized under the laws of the State of North Carolina.

63. Reynolds American is the United States parent company of R.J. Reynolds and SFNTC.

64. Reynolds American is an indirect, wholly owned subsidiary of British American Tobacco p.l.c.

65. Upon information and belief, Reynolds American participated in, directed, approved, coordinated, controlled, or ratified material aspects of the manufacture, marketing, distribution, product strategy, environmental policy, or product-stewardship practices concerning filtered cigarette products sold by its operating subsidiaries.

66. Reynolds American financially benefited from the manufacture and sale of filtered cigarette products by R.J. Reynolds and SFNTC, including products sold within Colorado and Denver.

67. Denver seeks to hold Reynolds American liable for its own acts and omissions and does not rely solely upon its ownership of R.J. Reynolds or SFNTC.

**6. British American Tobacco p.l.c. and Affiliated Entities**

68. Defendant British American Tobacco p.l.c. ("BAT p.l.c.") is a public limited company organized under the laws of England and Wales.

69. In July 2017, BAT p.l.c. acquired the remaining ownership interest in Reynolds American that it did not already own.

70. Following that transaction, Reynolds American became an indirect, wholly owned subsidiary of BAT p.l.c.

71. Upon information and belief, BAT p.l.c. participated in, directed, approved, coordinated, controlled, or ratified material aspects of the filtered-cigarette business relevant to the claims alleged herein, including post-acquisition product strategy, environmental policy, corporate communications, product stewardship, and responses to the known environmental consequences of discarded cigarette filters.

72. Denver seeks to hold BAT p.l.c. liable only for its own actionable conduct and not merely because of its corporate ownership interests.

**7. ITG Brands, LLC**

73. Defendant ITG Brands, LLC ("ITG") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Greensboro, North Carolina.

74. At all relevant times, ITG designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within Colorado and Denver.

75. ITG is the manufacturer or seller of filtered cigarette brands sold in Colorado, including Winston, Kool, Salem, Maverick, and other cigarette products containing cellulose acetate filters.

76. ITG placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Denver.

**8. Liggett Group LLC**

77. Defendant Liggett Group LLC ("Liggett") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Mebane, North Carolina.

78. At all relevant times, Liggett designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within Colorado and Denver.

79. Liggett placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Denver.

**9. Liggett Vector Brands LLC**

80. Defendant Liggett Vector Brands LLC ("Liggett Vector") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Morrisville, North Carolina.

81. At all relevant times, Liggett Vector marketed, promoted, distributed, supplied, or sold filtered cigarette products throughout the United States, including within Colorado and Denver.

82. Liggett Vector placed or participated in placing those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Denver.

**C. Local Distributor Defendant**

**10. Peerless Products, LLC**

83. Peerless Products, LLC, (hereinafter "Peerless"), is a Colorado limited liability company with its principal place of business at 717 S Sierra Madre St., Colorado Springs, CO 80903. Defendant Peerless Products, LLC may be served with service of process by serving its registered agent, Thomas Edwin Kleinschmidt, at 717 S Sierra Madre St., Colorado Springs, CO 80903, US.

84. At all relevant times, Peerless distributed, marketed, supplied, and sold filtered cigarette products within Plaintiff's jurisdiction, including products manufactured by one or more of the Manufacturing Defendants.

85. Peerless is, and at all relevant times was, engaged in the regular business of purchasing, marketing, warehousing, distributing, supplying, and selling filtered cigarette products throughout Plaintiff's jurisdiction as an integral participant in the commercial distribution chain through which those products reached retailers and consumers.

86. At all relevant times, Peerless purchased filtered cigarette products from one or more of the Manufacturing Defendants and distributed those products to convenience stores, grocery stores, pharmacies, tobacco retailers, gas stations, and other retail establishments serving Plaintiff's jurisdiction. Peerless regularly supplied retailers throughout Plaintiff's jurisdiction

with substantial quantities of filtered cigarette products manufactured by one or more Manufacturing Defendants.

87. Peerless was a substantial participant in the chain of distribution through which filtered cigarette products were introduced into Plaintiff's jurisdiction and made continuously available for retail sale throughout the municipality.

88. Peerless derived substantial revenue and economic benefit from the distribution and sale of filtered cigarette products within Plaintiff's jurisdiction.

89. Upon information and belief Peerless knew or reasonably should have known that filtered cigarette products were routinely consumed within Plaintiff's jurisdiction, that cigarette filters were ordinarily discarded immediately following consumption, and that discarded cigarette filters routinely accumulated upon municipal property and within municipal stormwater systems.

90. Upon information and belief, Peerless further knew or reasonably should have known that discarded cigarette filters routinely accumulate upon streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, waterways, and other municipal property within the communities in which the products were distributed and sold requiring a municipal response.

91. Although Peerless did not design or manufacture the cigarette filters at issue, it knowingly participated in placing substantial quantities of filtered cigarette products into Plaintiff's jurisdiction and materially contributed to the volume, density, and geographic distribution of discarded cigarette filters accumulating upon municipal property.

92. Upon information and belief, Peerless continued distributing filtered cigarette products within Plaintiff's jurisdiction despite the readily observable and widely recognized

accumulation of discarded cigarette filters throughout the communities it served and despite the foreseeable municipal burdens resulting from that continuing accumulation.

93. Peerless profited from the continued distribution and sale of filtered cigarette products while materially contributing to the continuing municipal harms alleged in this Complaint.

94. The conduct of Peerless was a substantial factor in causing the recurring physical invasion of Plaintiff's property and the resulting injuries alleged herein by continuously supplying filtered cigarette products into Plaintiff's jurisdiction and thereby materially contributing to the ongoing accumulation of discarded cigarette filters upon municipal property.

**D. Successor, Brand Transfer and Enterprise Allegations**

95. Plaintiff alleges upon information and belief that certain cigarette brands sold by Defendants during the relevant period were acquired, transferred, assigned, divested, or otherwise moved among tobacco-company entities, including entities associated with Reynolds, Lorillard, Brown & Williamson, ITG, BAT, and related corporate predecessors or successors.

96. Plaintiff does not name Lorillard Tobacco Company or Brown & Williamson Tobacco Corporation as separate current operating defendants at this time. Instead, Plaintiff alleges that their historical knowledge, documents, conduct, product decisions, brand responsibilities, liabilities, and market participation are relevant to the claims asserted against their successors, brand acquirers, parent entities, and related tobacco-company defendants, including R.J. Reynolds, Reynolds American, BAT, and ITG.

97. To the extent any Defendant contends that another entity designed, manufactured, sold, owned, transferred, distributed, controlled, or profited from a cigarette brand or filtered

cigarette product at issue, Plaintiff alleges successor liability, assumed liability, agency, ratification, aiding and abetting, concerted action, and substantial participation in the alternative, and will seek leave to conform the pleadings to the evidence as discovery confirms the precise corporate allocation of responsibility.

## III. AGENCY/JOINT VENTURE

98. At all relevant times, each Defendant acted individually and/or in concert with one or more of the other Defendants in the design, manufacture, marketing, distribution, and sale of filtered cigarette products. To the extent any Defendant acted through a parent corporation, subsidiary, affiliate, distributor, agent, servant, employee, representative, or other intermediary, such acts were authorized, directed, ratified, or otherwise undertaken within the course and scope of that relationship.

99. At all relevant times, Defendants rendered substantial assistance and encouragement to one another in placing filtered cigarette products incorporating non-biodegradable plastic filters into the stream of commerce. Each Defendant knew or reasonably should have known that the conduct described herein would foreseeably contribute to the continuing accumulation of cigarette filter waste on public property and to the nuisance, trespass, and statutory violations alleged in this Complaint. To the extent the evidence establishes an agency relationship, concerted action, joint enterprise, aiding and abetting, or other basis for derivative liability among one or more Defendants, Plaintiff alleges such liability in the alternative.

## IV. STATUTE OF LIMITATIONS

100. The wrongful conduct alleged herein constitutes a continuing nuisance and continuing trespass under Colorado law. Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating non-biodegradable cellulose acetate plastic filters into the Denver market, and the resulting accumulation of persistent plastic cigarette filter waste upon Plaintiff's property, stormwater infrastructure, drainage systems, waterways, and other public resources is continuous and recurring. Each sale and distribution of filtered cigarette products within Denver foreseeably results in additional cigarette filter waste being deposited upon municipal property, and each day that such persistent plastic waste remains upon Plaintiff's property constitutes a continuing interference with Plaintiff's property rights and public resources. Accordingly, Plaintiff seeks recovery for all damages, response costs, cleanup expenses, abatement costs, restitution, and other relief recoverable within the applicable limitations period, together with prospective equitable and injunctive relief necessary to abate the continuing nuisance and continuing trespass. To the extent any Defendant contends that discrete conduct occurred outside an applicable limitations period, Plaintiff independently seeks recovery for all injuries, damages, and municipal expenditures incurred within the applicable statutory period.

## V. JURISDICTION

101. This Court has subject-matter jurisdiction pursuant to article VI, section 9 of the Colorado Constitution because Colorado district courts are courts of general jurisdiction. Denver asserts claims arising exclusively under Colorado common law and Colorado statutory law and relies upon the Denver Revised Municipal Code, including Chapters 39, 48, 49, and 56 and the

specific municipal provisions alleged herein, as substantive support for its property interests, governmental authority, response obligations, damages, and requested equitable and abatement relief. References to federal permits, regulations, or environmental programs are included solely as factual background concerning Denver's governmental, proprietary, and regulatory responsibilities and do not create a federal cause of action.

102. This Court has personal jurisdiction over Defendants pursuant to section 13-1-124, C.R.S., and consistent with the Due Process Clause of the United States Constitution.

103. Each Defendant that manufactured, supplied, sold, or distributed filtered cigarettes within Colorado transacted business within Colorado, contracted to supply products within Colorado, and derived substantial revenue from filtered cigarettes sold and consumed within Colorado and Denver.

104. The Parent Defendants purposefully directed, approved, controlled, coordinated, or ratified relevant business conduct, product strategy, marketing, distribution, environmental policy, or product-stewardship activities concerning filtered cigarette products sold in Colorado, to the extent established by the evidence. Denver's claims against the Parent Defendants arise from or relate to that Colorado-directed conduct.

105. Venue is proper under C.R.C.P. 98 because Denver is located in the City and County of Denver, the property and infrastructure affected by the alleged conduct are located there, substantial portions of the alleged injury occurred there, and one or more Defendants transacted relevant business or supplied the challenged products there.

## VI. FACTUAL ALLEGATIONS

### A. The Filtered Cigarette

106. The filtered cigarette is a consumer product designed, manufactured, marketed, distributed, and sold by Defendants for the purpose of being ignited, smoked, and discarded following ordinary use.

107. A filtered cigarette consists principally of three components: (a) a tobacco column containing processed tobacco; (b) a cigarette filter attached to one end of the tobacco column; and (c) a paper wrapper that binds the product together for consumer use.

108. The cigarette filter is a separate and distinct component of the filtered cigarette. Unlike the tobacco column, which is consumed during smoking, the filter remains substantially intact following ordinary use and is intended to be separated from the cigarette immediately after consumption.

109. For decades, Defendants have manufactured and sold billions of filtered cigarettes each year with filters composed primarily of cellulose acetate, a synthetic plastic polymer selected for its filtration characteristics, durability, manufacturability, and commercial suitability.

110. Because the cigarette filter is not consumed during smoking, every filtered cigarette manufactured and sold by Defendants necessarily generates a discarded filter immediately upon completion of its ordinary and intended use.

111. The generation of a discarded cigarette filter is not an unintended consequence, accidental occurrence, or misuse of the product. Rather, it is an inherent, foreseeable, and unavoidable result of the product's intended design and ordinary use.

112. Defendants have long known that every filtered cigarette placed into the stream of commerce will ultimately produce a discarded cigarette filter requiring disposal by the consumer.

113. Accordingly, the post-consumption management and ultimate disposition of discarded cigarette filters constitute an integral and foreseeable part of the lifecycle of every filtered cigarette manufactured, marketed, distributed, and sold by Defendants.

**B. The Plastic Filter**

114. The cigarette filters used in the overwhelming majority of filtered cigarettes sold in the United States are composed primarily of cellulose acetate, a synthetic plastic polymer manufactured through the chemical modification of cellulose and engineered to provide durability, structural integrity, and filtration characteristics during the smoking process.

115. Although cellulose acetate is derived from cellulose, the manufacturing process fundamentally alters the material into a synthetic plastic that does not biodegrade under ordinary environmental conditions. Instead of decomposing into naturally occurring organic matter, discarded cellulose acetate filters persist in the environment for extended periods, where they gradually fragment into progressively smaller plastic particles.

116. Exposure to sunlight, moisture, mechanical abrasion, and environmental conditions may cause discarded cigarette filters to crack, fray, discolor, or fragment. These processes constitute physical deterioration rather than biological decomposition and do not eliminate the underlying plastic material from the environment.

117. As discarded cigarette filters fragment, they generate increasingly smaller plastic particles, including microplastics, that may be dispersed by wind, stormwater runoff, surface

waters, and other natural processes. The fragmentation of cellulose acetate therefore increases the distribution of plastic pollution rather than eliminating it.

118. In addition to their persistent plastic composition, discarded cigarette filters may retain residual tobacco, nicotine, heavy metals, and other chemical constituents absorbed during manufacture and ordinary consumer use. As a result, discarded cigarette filters are capable of introducing both persistent plastic pollution and associated contaminants into terrestrial and aquatic environments.

119. Defendants have long possessed knowledge concerning the composition, physical characteristics, environmental persistence, and post-consumption behavior of cellulose acetate cigarette filters, including their tendency to remain in the environment and fragment into smaller plastic particles following disposal.

120. Despite that knowledge, Defendants continued to design, manufacture, market, and distribute filtered cigarettes incorporating cellulose acetate filters without implementing feasible measures to eliminate or materially reduce the persistent plastic waste generated by the ordinary and intended use of their products.

121. The persistent plastic nature of cellulose acetate filters is a fundamental characteristic of the product selected, designed, manufactured, and placed into the stream of commerce by Defendants, and is a substantial factor contributing to the continuing municipal harms alleged in this Complaint.

**C. The Intended Product Lifecycle**

122. The ordinary and intended use of every filtered cigarette necessarily involves three sequential stages: (a) the manufacture and sale of a filtered cigarette incorporating a

cellulose acetate filter; (b) the consumer's use of the product through smoking; and (c) the immediate separation and disposal of the cigarette filter following completion of the smoking process.

123. Unlike many consumer products that may remain in service for months or years, the useful life of a filtered cigarette is intentionally brief. Defendants designed the product so that, upon completion of its intended use, the tobacco column is consumed while the plastic cigarette filter remains as a separate waste product requiring disposal.

124. The generation of a discarded cigarette filter is therefore not an unintended consequence of product misuse, but an inevitable and inherent result of the product functioning exactly as designed.

125. Defendants have long known that consumers rarely retain used cigarette filters and that the ordinary and intended use of a filtered cigarette necessarily culminates in the immediate disposal of the filter at or near the location where the product is consumed.

126. Because Defendants manufacture and sell billions of filtered cigarettes annually, they have long understood that the ordinary and intended use of their products inevitably generates billions of discarded plastic cigarette filters requiring post-consumption management and disposal each year.

127. The post-consumption management of discarded cigarette filters is not an activity performed by Defendants. Instead, the foreseeable costs and burdens associated with collecting, removing, transporting, managing, and disposing of discarded cigarette filters have been externalized to municipalities, property owners, and the public.

128. Defendants have continued to design, manufacture, market, distribute, and sell filtered cigarettes despite their longstanding knowledge that the intended lifecycle of the product predictably results in the widespread generation of persistent plastic waste throughout municipal environments.

129. The municipal harms alleged in this Complaint arise not from an isolated misuse of Defendants' products, but from the foreseeable and intended lifecycle of the filtered cigarette itself, which necessarily produces a discarded plastic filter upon completion of every ordinary use.

**D. The Foreseeable Disposal Pathway**

130. For decades, Defendants have known that the statistically dominant post-consumption disposition of cigarette filters is immediate disposal into the surrounding environment rather than retention, recycling, or placement into an appropriate waste receptacle.

131. Numerous scientific studies, governmental reports, industry publications, and Defendants' own research have consistently recognized that discarded cigarette filters constitute the single most commonly littered consumer product worldwide and are deposited in enormous quantities upon streets, sidewalks, parks, beaches, public rights-of-way, stormwater infrastructure, waterways, and other public and private property.

132. Denver’s parks and recreational facilities are among the public locations affected by cigarette-filter litter. Denver Revised Municipal Code section 39-17 prohibits littering within park facilities, including the disposal or accumulation of rubbish, waste, garbage, refuse, and other trash. Denver must devote personnel, equipment, and financial resources to enforcing those protections and removing cigarette-filter waste from parks and recreational property.

133. Denver Revised Municipal Code section 49-553 prohibits depositing or littering streets, alleys, and other public places with rubbish, waste, garbage, and other discarded material. Discarded cigarette filters routinely accumulate upon those locations, requiring Denver to conduct recurring street sweeping, litter collection, inspection, maintenance, removal, transportation, and disposal operations.

134. The widespread environmental deposition of discarded cigarette filters is neither random nor extraordinary. Rather, it is the foreseeable, recurring, and statistically predominant consequence of the ordinary and intended use of filtered cigarettes.

135. Defendants have long monitored consumer smoking behavior, product usage patterns, post-consumption disposal practices, and litter studies. Through those efforts, Defendants knew or reasonably should have known that a substantial percentage of consumers discard cigarette filters onto the ground immediately following use and that such disposal behavior has remained persistent over time.

136. Defendants also knew or reasonably should have known that cigarette filters were routinely discarded from moving and standing vehicles onto Denver streets, highways, alleys, parking areas, and other public places. Denver Revised Municipal Code section 54-130(a) expressly prohibits the deposit or throwing of rubbish, wastepaper, garbage, and other waste from vehicles upon those locations, yet this disposal pathway remains a predictable and recurring source of cigarette-filter accumulation throughout Denver.

137. Defendants further knew or reasonably should have known that discarded cigarette filters deposited upon streets, sidewalks, parking lots, parks, and other developed areas are routinely transported by wind, precipitation, and stormwater runoff into municipal drainage

systems, stormwater infrastructure, streams, rivers, lakes, coastal waters, and other receiving waters.

138. Denver Revised Municipal Code section 56-56 prohibits the placement of garbage and waste into sewers. Denver Revised Municipal Code section 56-102 prohibits polluted-water discharges into storm sewers and watercourses, the deposit of garbage or other waste upon public property or property under Denver's jurisdiction, and specified wastewater or polluted-water discharges into streams and watercourses. Denver Revised Municipal Code section 56-203 prohibits the disposal of garbage, sludge, and other waste materials within regulatory floodplains. Cigarette filters deposited upon Denver streets, parks, parking areas, and other developed surfaces are routinely transported into or through the sewers, stormwater infrastructure, drainageways, watercourses, receiving waters, and floodplain areas protected by those provisions.

139. The widespread accumulation of discarded cigarette filters upon municipal property and within municipal stormwater systems is therefore not the result of isolated acts of consumer misconduct. It is the predictable and statistically dominant consequence of placing billions of filtered cigarettes into the stream of commerce each year.

140. Because this disposal pathway has been well known for decades, Defendants have long been able to anticipate that municipalities would bear the recurring burdens and costs of collecting, removing, transporting, managing, and disposing of discarded cigarette filters deposited throughout municipal environments.

141. Despite possessing that knowledge, Defendants continued to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent plastic filters without

adopting reasonable measures to materially reduce the predictable generation and environmental accumulation of discarded cigarette filters.

142. The foreseeable disposal pathway for cigarette filters is a direct, foreseeable, and substantial cause of the continuing physical invasion of Plaintiff's property, the contamination of municipal stormwater systems, and the municipal expenditures and other injuries alleged in this Complaint.

**E. Defendants' Longstanding Knowledge of the Foreseeable Disposal Pathway**

143. Defendants have not been surprised by the widespread accumulation of discarded cigarette filters upon streets, sidewalks, parks, beaches, stormwater systems, waterways, and other public property. For decades, Defendants have studied the post-consumption disposition of cigarette filters, recognized the environmental persistence of cellulose acetate filters, evaluated consumer disposal behavior, and assessed the regulatory, commercial, and legal implications associated with discarded cigarette filters.

144. Beginning no later than the 1970s, Defendants and their trade organizations undertook extensive internal research concerning cigarette filter litter, environmental degradation, consumer disposal practices, and the increasing public concern regarding the accumulation of discarded cigarette filters throughout the environment. Those efforts included engineering studies, scientific research, strategic planning documents, market research, environmental assessments, and coordinated industry initiatives.

145. Defendants recognized that the widespread environmental deposition of discarded cigarette filters was not an isolated or sporadic occurrence, but a recurring and foreseeable consequence of the ordinary and intended use of filtered cigarettes. Defendants further

understood that discarded cigarette filters routinely accumulated on streets, sidewalks, beaches, parks, and other public property and were transported through Plaintiff's stormwater systems into rivers, lakes, coastal waters, and other receiving waters. Defendants further understood that many smokers incorrectly believed that the plastic filters are bio-degradable and could be disposed of in public places without any significant consequence. Instead of correcting that misimpression, defendants knowingly perpetuated it.

146. Internal industry documents further demonstrate that Defendants recognized discarded cigarette filters as a growing environmental issue that threatened increased governmental regulation, environmental legislation, taxation, and public criticism of the tobacco industry. Defendants therefore devoted substantial resources to evaluating both the environmental consequences of discarded cigarette filters and the potential business implications arising from those consequences.[2]

147. Defendants likewise recognized that cellulose acetate cigarette filters persisted in the environment for extended periods of time and that the ordinary disposal of cigarette filters presented continuing aesthetic, operational, and environmental problems for municipalities and other governmental entities. Internal engineering memoranda acknowledged that discarded cigarette filters created nuisance conditions upon streets and beaches and contributed to clogging and operational impacts affecting public wastewater and drainage infrastructure.[3]

---

[2] Dube, M. F., & R&D Department. (2005, March 1). A review of cigarette filter degradability (Document ID: ADFFLAV2005 060). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zqbk0228/

[3] Luke, J. (1991, September 20). Degradability of filter materials and plastics packaging (Document ID: pzxf0211) [Report]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/pzxf0211/

148. Defendants further recognized that they could not realistically control the locations where consumers discarded cigarette filters following ordinary use. Internal engineering documents acknowledged that smoker disposal behavior could not be reliably controlled and concluded that meaningful reduction of the environmental consequences associated with discarded cigarette filters necessarily required consideration of changes to the product itself rather than reliance solely upon consumer conduct.[4]

149. Throughout the following decades, Defendants continued to investigate cigarette filter litter through consumer research, engineering studies, environmental investigations, product development initiatives, and strategic planning efforts. Those investigations included studies of smoker disposal behavior, environmental persistence, biodegradable filter technologies, alternative filter materials, environmentally oriented product concepts, portable disposal devices, and other measures intended to address the foreseeable accumulation of discarded cigarette filters.

150. Defendants' extensive and continuing research confirms that the environmental accumulation of discarded cigarette filters was not an unforeseen consequence of filtered cigarettes, but rather a well-understood characteristic of the products' ordinary, intended, and foreseeable lifecycle.

**F. Defendants' Internal Research and Corporate Decision-Making**

151. Defendants did not merely recognize the environmental accumulation of discarded cigarette filters. Over a period spanning decades, Defendants devoted substantial scientific, engineering, marketing, and financial resources to studying the problem, evaluating

[4] ibid

potential responses, and assessing the impact of cigarette filter waste upon the tobacco industry's commercial interests.

152. Internal research programs included investigations into the environmental persistence of cellulose acetate filters, the development of biodegradable and degradable filter materials, alternative filter designs, modified filter components, environmentally oriented cigarette concepts, smoker disposal behavior, portable disposal devices, public education initiatives, and other measures intended to address the accumulation of discarded cigarette filters following ordinary consumer use.

153. Defendants' internal documents further demonstrate that they evaluated the commercial feasibility, consumer acceptance, manufacturing implications, regulatory consequences, and competitive effects associated with alternative filter technologies and environmentally oriented product modifications before making business decisions concerning whether such alternatives would be implemented.

154. Defendants likewise evaluated the increasing public concern regarding discarded cigarette filters, monitored proposed legislation and regulatory initiatives concerning cigarette filter waste, assessed potential environmental taxation and cleanup obligations, and developed coordinated corporate strategies for responding to those emerging issues.

155. In 1979, the Tobacco Institute issued guidance in a document titled "Litter (A Proposal for TI Policy)," stating: "Our best course of action may be maintaining a low profile while working to exempt cigarettes from coverage of pending litter control legislation."[5]

---

[5] Landman, A., Peterson, J. R., Christopher, H., Crohn, M. H., Sustana, R., & Edelman. (1999, December 24). Letters about social acceptability of smoking and "litter" (A proposal for TI

156. Internal strategic planning documents recognized that discarded cigarette filters had become one of the most visible forms of environmental litter and acknowledged that increasing public concern regarding cigarette filter waste presented a potential threat to cigarette sales, public acceptance of smoking, and future governmental regulation. Rather than treating cigarette filter waste solely as a consumer conduct issue, Defendants analyzed its implications for product development, governmental affairs, public relations, and long-term corporate planning.

157. Defendants also evaluated whether modifications to cigarette filters and related product components could reduce the environmental persistence of discarded cigarette filters or otherwise lessen the environmental impacts associated with filtered cigarettes. Those evaluations included research into biodegradable filter materials, modified cellulose acetate compositions, alternative filter structures, and other product design concepts intended to reduce environmental persistence.[6]

158. Defendants' internal research further demonstrated that they understood the practical limitations of relying solely upon smoker education and voluntary disposal campaigns. Defendants investigated portable ashtrays, public education programs, anti-litter campaigns, and other behavioral initiatives while simultaneously recognizing that smoker disposal behavior remained highly variable and that discarded cigarette filters would continue to accumulate throughout the environment as a foreseeable consequence of ordinary product use.

---

Policy) (Document ID: qrhp0219). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/qrhp0219/, p.3

[6] R&D key programs. Developmental programs (1995, August 10) (Document ID: qgcm0221) [Internal report and email correspondence]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/qgcm0221/

159. For example, a survey conducted in 1996 breaking down smokers by age group and sex reported that up to 96% of smokers dispose of their cigarette ends on the ground.[7]

160. Despite the breadth of this research and the substantial corporate resources devoted to the issue, Defendants continued manufacturing and marketing filtered cigarettes incorporating persistent cellulose acetate filters while accepting the continuing environmental accumulation of discarded cigarette filters as an ordinary incident of their business operations. Industry documents state that the cost of adopting a more degradable filter would be two hundredths of a penny per pack.[8] Despite this, the Defendants chose to shift the costs of the disposal and abatement of plastic filters to municipalities and other governmental entities.

161. Defendants' internal research and strategic planning demonstrate that the environmental accumulation of discarded cigarette filters was not an unforeseen or accidental consequence of their products. Rather, it was a well-understood condition that Defendants repeatedly studied, evaluated, and addressed through corporate planning while continuing to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent plastic filters.

**G. Defendants' Deliberate Business Decisions**

162. The continued manufacture, marketing, distribution, and sale of filtered cigarettes incorporating cellulose acetate filters was not the result of inadvertence, accident, or a lack of available information. Rather, it was the product of deliberate and continuing business decisions

[7] Tidy Britain Group. (1996, March). Attitudes towards cigarette disposal outdoors; N403 (Document ID: nffy0090) [Report data and charts]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/nffy0090/
[8] Philip Morris. (2004, November 18). Marlboro product quality.ppt (Document ID: glcb0219) [PowerPoint slides, email attachment]. Philip Morris Records, Master Settlement Agreement, Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/glcb0219/, p. 10

made after decades of internal research, engineering evaluations, environmental studies, consumer research, and strategic planning concerning the foreseeable accumulation of discarded cigarette filters.

163. Defendants possessed the scientific knowledge, engineering capability, manufacturing expertise, financial resources, and organizational capacity to investigate and evaluate product modifications, alternative filter technologies, biodegradable materials, and other measures intended to reduce the environmental persistence and municipal impacts of discarded cigarette filters.

164. By 1995, "[a] filter was developed that in fact disappeared within 10 minutes when immersed in a cup of water". "After nearly three years of exploratory development the effort was suspended so that resources could be refocused on other business priorities." [9]

165. Defendants likewise evaluated non-design measures, including public education campaigns, smoker disposal initiatives, portable ashtrays, permanent receptacles, product stewardship concepts, governmental relations strategies, and legislative initiatives directed toward cigarette filter waste. Those efforts confirmed Defendants' understanding that discarded cigarette filters would continue to accumulate throughout the environment as a foreseeable consequence of the ordinary use of filtered cigarettes.

166. Internal strategic planning documents further demonstrate that Defendants viewed cigarette filter waste not simply as an environmental issue, but as a matter affecting future

---

[9] Dube, M. F., & R&D Department. (2005, March 1). A review of cigarette filter degradability (Document ID: ADFFLAV2005 060). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zqbk0228/

regulation, taxation, public acceptance of smoking, and the long-term commercial interests of the tobacco industry. Defendants therefore devoted substantial corporate resources to monitoring legislative developments, coordinating industry responses, and evaluating the business implications of cigarette filter litter while continuing to market the same persistent plastic filter.[10]

167. Although Defendants investigated numerous potential responses—including alternative filter technologies, biodegradable materials, portable ashtrays, public education campaigns, and other environmental initiatives—their internal research also acknowledged the practical limitations of relying upon consumer disposal behavior alone. Defendants nevertheless continued to manufacture and market filtered cigarettes incorporating persistent cellulose acetate filters while transferring the foreseeable costs of their products' post-consumption lifecycle to municipalities and other public entities.

168. The continuation of Defendants' existing product design and marketing practices was therefore not the product of ignorance or a lack of available information. Rather, it reflected deliberate business decisions made after decades of scientific research, engineering evaluations, environmental investigations, consumer studies, and strategic planning concerning the foreseeable accumulation of discarded cigarette filters and the resulting burdens imposed upon municipalities.

[10] Philip Morris USA. (2001, May 28). PMUSA public place smoking policy & planning meeting 20010528 - 20010529 working notes (Document ID: zkkn0178). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zkkn0178/

169. Defendants' deliberate business decisions, undertaken with longstanding knowledge of the ordinary, intended, and foreseeable post-consumption disposal pathway of filtered cigarettes, constitute a substantial factual basis for the claims asserted in this Complaint.

170. The continuing manufacture, distribution, marketing, promotion, and sale of filtered cigarettes by Defendants continuously replenishes the supply of discarded cigarette filters entering Plaintiff's municipality, such that municipal removal efforts cannot permanently eliminate the condition so long as Defendants continue introducing the challenged products into the stream of commerce.

**H. Feasible Measures to Reduce the Municipal Harm**

171. Throughout the period relevant to this action, Defendants possessed the technical expertise, engineering capability, scientific knowledge, manufacturing resources, and financial capacity to investigate and evaluate measures capable of materially reducing the municipal harms associated with discarded cigarette filters.

172. Defendants' own research and development programs included investigations into biodegradable filter materials, modified cellulose acetate formulations, alternative filter components, environmentally-oriented cigarette concepts, revised filter construction, modified tipping papers, alternative wrapping materials, and other engineering approaches directed toward reducing the environmental persistence of discarded cigarette filters

173. Defendants likewise investigated non-design measures intended to reduce the accumulation of discarded cigarette filters within the environment, including portable ashtrays, permanent receptacles, smoker disposal campaigns, environmental education initiatives, product stewardship concepts, and other post-consumption management strategies.

174. Internal engineering documents acknowledged that meaningful reduction of the environmental consequences associated with discarded cigarette filters required consideration of changes to the product itself, recognizing that smoker disposal behavior could not realistically be controlled through voluntary efforts alone.

175. Defendants further evaluated consumer acceptance, manufacturing feasibility, commercial implications, and regulatory considerations associated with environmentally oriented product modifications and alternative filter technologies before determining whether such measures would be implemented.

176. The existence of these research programs and engineering evaluations demonstrates that feasible measures to materially reduce the persistence and municipal impacts of discarded cigarette filters were neither speculative nor unknown to Defendants. Rather, Defendants themselves devoted substantial resources over a period of decades to investigating those measures.

177. Despite possessing the capability to investigate and implement measures capable of materially reducing the municipal harms associated with discarded cigarette filters, Defendants continued to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters while transferring the foreseeable costs of their products' post-consumption lifecycle to municipalities and other public entities.

178. Plaintiff does not allege that any single engineering modification or stewardship initiative would have completely eliminated discarded cigarette filters or the resulting municipal harms. Rather, Plaintiff alleges that Defendants possessed and investigated numerous feasible

opportunities to materially reduce those harms yet elected to continue marketing substantially the same persistent plastic filter while externalizing the resulting burdens.

### I. The Municipal Consequences of Defendants' Conduct

179. As a direct, natural, and foreseeable consequence of Defendants' continuing manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters, discarded cigarette filters accumulate throughout Plaintiff's municipality upon streets, sidewalks, parks, public rights-of-way, parking areas, public facilities, stormwater infrastructure, drainage systems, waterways, and other publicly owned or maintained property.[11]

180. The accumulation of discarded cigarette filters is neither isolated nor incidental. It is a recurring condition resulting from the ordinary, intended, and foreseeable post-consumption lifecycle of filtered cigarettes and requires Plaintiff to respond on a continuing basis through its public works, sanitation, parks, streets, stormwater, environmental, and other municipal operations.

181. Discarded cigarette filters deposited upon municipal streets, sidewalks, parking areas, and other impervious surfaces are routinely transported by wind, rainfall, and stormwater runoff into gutters, catch basins, storm drains, culverts, detention facilities, drainage channels, and other components of Plaintiff's municipal stormwater system before ultimately entering creeks, rivers, lakes, and other receiving waters.

---

[11] Schneider, J. E., Scheibling, C. M., Peterson, N. A., et al. (2020). Online simulation model to estimate the total costs of tobacco product waste in large U.S. cities. International Journal of Environmental Research and Public Health, 17(13), 4705. https://doi.org/10.3390/ijerph17134705

182. The persistent plastic composition of cellulose acetate filters allows discarded cigarette filters to remain within the municipal environment for extended periods, where they physically accumulate upon municipally owned property, interfere with the intended functioning of municipal infrastructure, contribute to hydraulic obstruction and contamination, require continuing removal, and contribute to the degradation of municipal infrastructure and public spaces.

183. Plaintiff must continually devote personnel, equipment, facilities, administrative resources, and financial resources to investigating, monitoring, collecting, removing, transporting, handling, managing, and disposing of discarded cigarette filters deposited throughout the municipality.

184. Defendants' conduct has required Plaintiff to divert personnel, equipment, financial resources, and operational capacity from other governmental functions in order to inspect, investigate, monitor, maintain, repair, restore, rehabilitate, and protect municipally owned property and infrastructure affected by Defendants' products. These diversions are separate from litigation expenses and constitute direct operational and proprietary losses resulting from the physical impacts of Defendants' products.

185. Plaintiff has sustained continuing physical injury to municipally owned infrastructure and therefore incurs continuing expenditures associated with maintaining streets, sidewalks, parks, stormwater infrastructure, drainage systems, public rights-of-way, recreational facilities, waterways, and other municipal property affected by the continuing accumulation of discarded cigarette filters.

186. Plaintiff further incurs environmental, regulatory, planning, inspection, and administrative burdens associated with addressing the continuing accumulation of discarded cigarette filters and the persistent plastic waste generated by Defendants' products.

187. The municipal consequences alleged herein are continuing and cumulative. Each additional filtered cigarette manufactured, marketed, distributed, and sold by Defendants foreseeably results in the generation of an additional discarded cigarette filter and contributes to the continuing burdens imposed upon Plaintiff's property, infrastructure, governmental operations, and public resources.

188. Plaintiff seeks recovery solely for injuries to its own municipally owned property, infrastructure, proprietary interests, governmental operations, and financial resources. Plaintiff does not seek recovery for personal injuries allegedly sustained by individual smokers or members of the general public.

**J. Continuing Physical Presence of Discarded Cigarette Filters on Municipal Property**

189. The discarded cigarette filters generated by Defendants' products do not disappear upon consumption. Rather, they remain physically present throughout Plaintiff's municipality until collected, removed, transported, and disposed of through continuing municipal efforts or natural forces.

190. As a direct and foreseeable consequence of Defendants' continuing manufacture, marketing, distribution, and sale of filtered cigarettes, discarded cigarette filters repeatedly and continually accumulate upon Plaintiff's streets, sidewalks, parks, public rights-of-way, stormwater facilities, drainage systems, waterways, and other publicly owned or maintained property.

191. The physical accumulation of discarded cigarette filters upon municipal property is continuous. Municipal collection and cleanup efforts temporarily remove some discarded cigarette filters, but those efforts are immediately offset by the continual generation and deposition of additional discarded cigarette filters resulting from the ongoing sale, consumption, and disposal of filtered cigarettes.

192. The continuing presence of discarded cigarette filters interferes with Plaintiff's possession, use, maintenance, operation, management, and enjoyment of municipal property by requiring Plaintiff to devote continuing public resources to locating, collecting, removing, transporting, managing, and disposing of discarded cigarette filters deposited throughout the municipality.

193. The accumulation of discarded cigarette filters likewise interferes with the intended operation of Plaintiff's stormwater infrastructure by contributing to the physical accumulation of debris within gutters, catch basins, storm drains, culverts, drainage channels, detention facilities, and related municipal infrastructure requiring continuing inspection, maintenance, and cleaning.

194. Because cellulose acetate cigarette filters persist within the environment for extended periods of time, the physical presence of discarded cigarette filters upon municipal property is not self-correcting. Instead, the condition persists absent continuing municipal intervention.

195. Each additional filtered cigarette manufactured, marketed, distributed, and sold by Defendants foreseeably contributes to the continuing physical accumulation of discarded

cigarette filters upon municipal property and to the continuing burdens imposed upon Plaintiff's governmental operations.

196. The continuing physical presence of discarded cigarette filters upon Plaintiff's property constitutes a recurring condition arising from the ordinary, intended, and foreseeable post-consumption lifecycle of Defendants' products and forms the factual basis for the claims asserted in this Complaint.

**K. Continuing Municipal Response and Abatement Costs**

197. As a direct, natural, and foreseeable consequence of Defendants' conduct, Plaintiff has incurred and continues to incur substantial expenditures in responding to the continuing accumulation of discarded cigarette filters throughout its municipality.

198. Those expenditures include, without limitation, the costs of investigating, monitoring, inspecting, collecting, removing, transporting, handling, managing, and disposing of discarded cigarette filters deposited upon municipal property and within Plaintiff's stormwater infrastructure.

199. Plaintiff further incurs substantial expenditures associated with repairing, restoring, rehabilitating, maintaining, cleaning, repairing, and operating streets, sidewalks, gutters, catch basins, storm drains, culverts, drainage channels, detention facilities, parks, public rights-of-way, waterways, recreational facilities, and other municipal property affected by the continuing accumulation of discarded cigarette filters.[12]

---

[12] Schneider, J. E., Scheibling, C. M., Peterson, N. A., et al. (2020). Online simulation model to estimate the total costs of tobacco product waste in large U.S. cities. International Journal of Environmental Research and Public Health, 17(13), 4705. https://doi.org/10.3390/ijerph17134705

200. Plaintiff likewise devotes personnel, equipment, vehicles, facilities, administrative resources, engineering resources, environmental resources, and other governmental assets to responding to the continuing accumulation of discarded cigarette filters generated by Defendants' products.

201. Plaintiff also incurs ongoing planning, inspection, regulatory compliance, environmental management, public education, and administrative costs associated with addressing the continuing municipal consequences of discarded cigarette filters and the persistent plastic waste generated by Defendants' products.

202. Defendants' conduct has required Plaintiff to divert municipal personnel, equipment, financial resources, and operational capacity away from other governmental purposes in order to inspect, monitor, repair, restore, maintain, and protect municipally owned property affected by discarded cigarette filters.

203. Because Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters, Plaintiff reasonably anticipates continuing to incur substantial future expenditures responding to the ongoing accumulation of discarded cigarette filters throughout its municipality.

204. The continuing municipal response costs alleged herein were not voluntarily assumed by Plaintiff. Rather, they are the direct and foreseeable consequence of Defendants' continuing decisions to manufacture, market, distribute, and sell products whose ordinary, intended, and foreseeable post-consumption lifecycle generates persistent plastic waste upon municipal property.

205. Denver's response expenditures are also undertaken pursuant to its responsibilities and authority under Denver Revised Municipal Code Chapter 48 and sections 39-17, 54-130(a), 49-553, 56-56, 56-102, and 56-203. Those provisions require or authorize Denver to prevent, investigate, regulate, remove, remediate, and abate litter and waste conditions affecting parks, streets, alleys, public places, sewers, stormwater systems, drainageways, watercourses, receiving waters, floodplains, and other Denver-owned or maintained property and infrastructure.

206. Plaintiff seeks recovery of all past, present, and future response costs, together with all other legal, equitable, and statutory relief authorized by applicable law.

**L. Aggregate and Concurrent Causation; Commingled and Cumulative Harm**

207. The harms alleged in this Complaint were caused by the cumulative and concurrent contribution of filtered cigarette products manufactured, marketed, supplied, distributed, and sold by Defendants for purchase and consumption within Denver.

208. Denver does not allege that a single discarded cigarette filter, standing alone, caused the injuries at issue. Rather, the physical condition affecting Denver-owned or maintained property and infrastructure results from the continuing accumulation of enormous quantities of discarded cigarette filters introduced into Denver through Defendants' respective commercial activities.

209. Each Defendant that manufactured, supplied, distributed, or sold filtered cigarettes within Denver materially increased the number, density, geographic dispersion, and continuing physical accumulation of discarded cigarette filters upon Denver-owned or maintained property and within Denver's stormwater and drainage infrastructure.

210. Each such Defendant's contribution to the continuing condition was substantial and was more than negligible, theoretical, or de minimis.

211. The discarded cigarette filters at issue share the characteristics material to Denver's injuries. They remain after ordinary consumption, are composed primarily of persistent cellulose acetate plastic, require immediate disposal, accumulate upon public property, and are transported by wind, precipitation, snowmelt, and stormwater runoff into gutters, catch basins, storm drains, drainageways, creeks, rivers, lakes, and other receiving waters.

212. Once discarded, cigarette filters from multiple manufacturers become physically commingled upon Denver-owned or maintained property and within Denver infrastructure. Environmental exposure, weathering, fragmentation, stormwater transportation, street sweeping, collection, and disposal frequently remove or obscure brand-specific identifying characteristics.

213. The commingling of discarded cigarette filters does not eliminate causation. Each relevant Defendant's products contributed to the aggregate physical condition and increased the personnel, equipment, investigation, maintenance, collection, removal, transportation, disposal, remediation, and abatement costs incurred by Denver.

214. Defendants knew or reasonably should have known that filtered cigarettes would be consumed throughout Denver, that a substantial percentage of the resulting filters would be discarded into the surrounding environment, and that discarded filters from numerous manufacturers would become commingled upon public property and within public infrastructure.

215. Denver will establish each relevant Defendant's contribution through sales and shipment records, wholesale and retail distribution evidence, tax and regulatory records, physical

sampling, brand-identification studies, litter audits conducted across appropriate locations and time periods, expert analysis, and other direct and circumstantial evidence.

216. Evidence of a Defendant's share of filtered-cigarette sales or distribution within the relevant Denver market is relevant evidence of that Defendant's actual contribution to the cigarette-filter waste stream. Denver relies upon such evidence as proof of causation, fault, and relative contribution, not as an allegation that market share alone creates an independent substantive duty or cause of action.

217. No single discarded filter accounts for Denver's injuries, and Denver's cleanup and maintenance costs cannot reasonably be assigned on a filter-by-filter basis after the filters have become commingled.

218. To the extent allocation among Defendants is required, Denver seeks allocation under section 13-21-111.5, C.R.S., and other applicable Colorado law based upon competent evidence of each Defendant's actual contribution, including sales volume, shipments, distribution, geographic market participation, brands, period of participation, physical sampling, and other relevant evidence.

219. Denver does not seek to impose liability upon any Defendant solely because it is a member of the tobacco industry. Denver seeks to hold each Defendant responsible for its own actionable conduct and the proportion of harm caused or contributed to by that conduct under Colorado law.

## VII. CAUSES OF ACTION
### COUNT I
### Public Nuisance

220. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

221. Through their design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters, and through their continuing decisions to market those products despite longstanding knowledge of their ordinary, intended, and foreseeable post-consumption disposal pathway, Defendants created, contributed to, participated in, and substantially assisted in creating a continuing condition that has resulted in the widespread accumulation of discarded cigarette filters upon Plaintiff's property and throughout Plaintiff's municipality.

222. Denver does not seek to impose public-nuisance liability merely because Defendants sold lawful products that were later misused by consumers. The nuisance alleged herein arises from each Defendant’s own actionable conduct, including, as applicable, the Manufacturing Defendants’ selection and continued use of a persistent cellulose acetate plastic component that necessarily remains after every ordinary use of the product; Defendants’ continued placement and distribution of enormous quantities of filtered cigarettes into the Denver market with longstanding knowledge of the recurring and statistically predictable post-consumption disposition of those filters; the Manufacturing Defendants’ failure to adopt feasible designs or materials capable of materially reducing the persistence of the resulting filter waste; and each Defendant’s continuing substantial contribution to the product stream that creates and replenishes the physical condition alleged herein.

223. The cigarette filter is not incidental packaging or a separate container discarded independently of the use of the product. It is an integral component of the cigarette that remains after the cigarette functions exactly as designed and necessarily becomes a separate waste item requiring disposal upon completion of every ordinary use. The physical condition alleged herein therefore results from the ordinary lifecycle of Defendants' products combined with Defendants' own design, manufacturing, supply, and distribution conduct, and not merely from an extraordinary or unintended misuse of those products by third parties.

224. The continuing accumulation of discarded cigarette filters upon streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage systems, waterways, and other public property constitutes a continuing interference with rights common to the public, including the public's interest in the safe, efficient, and unobstructed use of municipal property, public infrastructure, public waterways, and other public resources.

225. The condition created and maintained by Defendants is ongoing. Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters, and each additional filtered cigarette placed into the stream of commerce foreseeably contributes to the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality.

226. The interference alleged herein is substantial. It is neither isolated nor temporary, but instead requires Plaintiff to continually investigate, monitor, collect, remove, transport, manage, and dispose of discarded cigarette filters; maintain and operate municipal property and infrastructure affected by their accumulation; and devote continuing governmental resources to addressing the resulting environmental and operational consequences.

227. The municipal harms alleged herein arise from injuries to Plaintiff's own governmental, proprietary, and property interests and are separate and distinct from any personal injuries or healthcare costs allegedly sustained by individual smokers or members of the general public.

228. Defendants knew, or reasonably should have known, that the ordinary, intended, and foreseeable use of filtered cigarettes would result in the continuing deposition of persistent plastic cigarette filters throughout municipal environments and that municipalities would bear the resulting burdens of responding to that condition. Despite that knowledge, Defendants continued to place billions of filtered cigarettes incorporating persistent cellulose acetate filters into the stream of commerce.

229. The condition alleged herein results from the cumulative and concurrent contribution of filtered cigarette products manufactured, marketed, supplied, distributed, and sold within Denver. Each relevant Defendant's conduct increased the volume, density, geographic dispersion, and continuing accumulation of discarded cigarette filters upon Denver-owned or maintained property and within Denver infrastructure.

230. Each relevant Defendant's participation in creating, contributing to, assisting, or maintaining the condition was substantial and more than negligible, theoretical, or de minimis. The fact that discarded filters from multiple manufacturers become commingled does not eliminate the causal contribution of a Defendant whose products or distribution conduct materially increased the condition.

231. The public nuisance is the continuing and cumulative physical condition affecting Denver-owned or maintained property, infrastructure, public rights-of-way, stormwater facilities,

drainage systems, waterways, and other public resources. Denver does not allege that a single individual filter caused a separately identifiable portion of that aggregate condition.

232. The continuing physical condition alleged herein directly implicates and interferes with the public rights and municipal interests protected by Denver Revised Municipal Code Chapter 48 and sections 39-17, 54-130(a), 49-553, 56-56, 56-102, and 56-203 and by Chapter 48 of the Denver Revised Municipal Code. Those provisions prohibit or regulate litter, rubbish, refuse, garbage, waste accumulation, waste deposited upon public property, waste discharged into sewers and stormwater systems, and waste affecting watercourses, floodplains, parks, streets, alleys, public rights-of-way, and other public places.

233. The discarded cigarette filters alleged herein constitute litter, rubbish, refuse, garbage, solid waste, or other discarded waste material within the purposes of those provisions. Their continuing accumulation upon Denver-owned or maintained property and their transportation into Denver's gutters, catch basins, storm drains, drainageways, sewers, watercourses, receiving waters, and floodplain areas constitute the type of recurring physical waste condition that Denver is legally required and authorized to prevent, investigate, remove, remediate, and abate.

234. Denver Revised Municipal Code Chapter 48 and sections 48-46 and 48-47 further authorize administrative or judicial enforcement of Denver's solid-waste requirements and implementing rules. Denver's continuing investigation, collection, removal, transportation, disposal, maintenance, remediation, and abatement activities are therefore necessary and reasonable municipal responses to a condition that interferes with rights common to the public

and with Denver's ownership, operation, maintenance, and protection of public property and infrastructure.

235. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained, and will continue to sustain, substantial response costs, operational burdens, environmental harms, maintenance expenses, investigation costs, monitoring costs, collection costs, transportation costs, disposal costs, and other injuries recoverable under the law governing public nuisance.

236. Denver is entitled to recover all damages, response costs, abatement costs, restitutionary relief, declaratory relief, injunctive relief where authorized, and all other relief available under Colorado law.

**COUNT II**
**Continuing Trespass**

237. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

238. Plaintiff owns, possesses, controls, manages, or otherwise has legally protected interests in municipal property, including but not limited to streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage systems, waterways, public facilities, and other publicly owned or maintained property within its jurisdiction.

239. Through the design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters, Defendants knowingly placed into the stream of commerce products whose ordinary, intended, and foreseeable post-consumption lifecycle results in the recurring physical deposition of discarded cigarette filters upon Plaintiff's property.

240. The discarded cigarette filters generated by Defendants' products physically enter, remain upon, and accumulate throughout Plaintiff's property without Plaintiff's authorization, permission, or consent.

241. The physical presence of discarded cigarette filters upon Plaintiff's property is continuous. Municipal cleanup efforts remove only a portion of the accumulated filters, while the continuing manufacture, distribution, sale, consumption, and disposal of filtered cigarettes results in the continual deposition of additional discarded cigarette filters.

242. Defendants knew, or reasonably should have known, that the ordinary, intended, and foreseeable use of their products would result in the recurring physical presence of discarded cigarette filters upon municipal property and within municipal stormwater infrastructure.

243. The continuing physical accumulation of discarded cigarette filters interferes with Plaintiff's possession, control, maintenance, operation, management, and use of its property and requires Plaintiff to expend substantial public resources to investigate, monitor, collect, remove, transport, manage, and dispose of the discarded filters.

244. Once discarded, filters from multiple manufacturers become commingled upon Denver-owned or maintained property and within Denver's stormwater and drainage infrastructure. Environmental exposure, weathering, fragmentation, transportation, and collection frequently obscure identifying characteristics. Each relevant Defendant's substantial contribution of filtered cigarettes to the Denver market materially increased the continuing physical invasion and accumulation alleged herein.

245. Denver's lack of consent is further established by Denver Revised Municipal Code Chapter 48 and sections 39-17, 54-130(a), 49-553, 56-56, 56-102, and 56-203 and Chapter

48, which prohibit or regulate the deposit, disposal, accumulation, and discharge of litter, rubbish, refuse, garbage, and other waste upon the categories of Denver property and infrastructure affected by discarded cigarette filters. Denver has not authorized Defendants or consumers of their products to use Denver-owned or maintained property, sewers, stormwater infrastructure, drainageways, watercourses, receiving waters, or floodplains as disposal locations for cigarette-filter waste.

246. Defendants intended the acts of designing, manufacturing, supplying, distributing, and selling substantial quantities of filtered cigarettes for purchase and consumption within Denver and knew that the recurring physical entry and accumulation of discarded filters upon Denver-owned or maintained property was a natural and substantially certain consequence of those acts.

247. The continuing physical presence of discarded cigarette filters upon Denver-owned or maintained property constitutes a continuing and recurring invasion of Denver's legally protected property interests under Colorado law.

248. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain damages, response costs, maintenance costs, investigation costs, operational expenses, abatement costs, and other losses recoverable under the law governing trespass.

249. Denver is entitled to recover compensatory damages, response costs, property-maintenance and restoration costs, abatement costs, injunctive relief where authorized, and all other legal and equitable relief available under Colorado law.

**COUNT III**
**Negligence-Design Defect**

250. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

251. For purposes of this Count, "Design Defendants" means those Defendants shown to have designed, selected, approved, controlled, ratified, or materially participated in the selection or continued use of the challenged cellulose acetate filter design.

252. Design Defendants owed a duty to exercise reasonable care in the design, manufacture, marketing, distribution, and sale of their products so as to avoid creating foreseeable and unreasonable risks of harm to the property, infrastructure, governmental operations, and proprietary interests of municipalities and other public entities.

253. Design Defendants knew, or in the exercise of reasonable care should have known, that the ordinary, intended, and foreseeable post-consumption lifecycle of filtered cigarettes would result in the recurring accumulation of persistent cellulose acetate filters upon municipal property and within municipal stormwater systems and waterways.

254. Design Defendants further knew, or in the exercise of reasonable care should have known, that municipalities would foreseeably incur substantial costs investigating, monitoring, collecting, removing, transporting, managing, disposing of, and otherwise responding to the continuing accumulation of discarded cigarette filters.

255. Design Defendants breached their duty of reasonable care by, among other things:

a. Designing, manufacturing, and selling filtered cigarettes incorporating persistent cellulose acetate filters despite longstanding knowledge of their foreseeable post-consumption disposal pathway;
b. Continuing to market and distribute those products after acquiring extensive knowledge regarding the resulting municipal harms;

c. Failing to implement feasible measures capable of materially reducing the persistent plastic waste generated by their products;
d. Failing to exercise reasonable care in evaluating and implementing product designs, materials, or stewardship measures capable of reducing foreseeable municipal harms; and
e. Continuing to transfer the foreseeable post-consumption lifecycle costs of their products to municipalities despite possessing the capability to materially reduce those harms.

256. Design Defendants' negligence was a substantial factor in causing the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality and the resulting operational, environmental, financial, and property-related injuries alleged in this Complaint.

257. Each Design Defendant's relevant conduct materially increased the quantities of filtered cigarettes incorporating the challenged design that were consumed and discarded within Denver and thereby materially increased the resulting accumulation of discarded cigarette filters upon Denver-owned or maintained property and within Denver's stormwater and drainage infrastructure. Denver's injuries arise from that aggregate and cumulative condition.

258. The foreseeable conduct of consumers in discarding cigarette filters does not constitute an extraordinary, independent, or superseding cause because the Design Defendants knew or reasonably should have known that widespread environmental disposal was the ordinary, statistically prevalent, and foreseeable post-consumption pathway for filtered cigarettes. Consumer disposal therefore does not break the causal connection between the Design Defendants' negligent conduct and the injuries alleged herein.

259. As a direct and proximate result of Design Defendants' negligence, Plaintiff has incurred and will continue to incur substantial response costs, maintenance expenses, operational costs, investigation costs, monitoring costs, engineering costs, disposal costs, environmental management costs, and other recoverable damages.

260. As a direct and proximate result of the Design Defendants' negligence, Denver is entitled to recover compensatory damages for physical injury to its property and infrastructure, response and abatement costs attributable to that injury, and all other legal relief authorized by Colorado law.

**COUNT IV**
**Strict Product Liability - Design Defect**

261. Plaintiff realleges each and every allegation contained above, as though set forth in full herein.

262. For purposes of this Count, "Product-Manufacturer Defendants" means only those Defendants shown to have designed, produced, manufactured, assembled, constructed, or otherwise prepared the filtered cigarette products or filter components at issue and that qualify as manufacturers under Colorado product-liability law.

263. At all relevant times, the Product-Manufacturer Defendants were engaged in the business of designing, manufacturing, producing, and selling filtered cigarettes and expected those products to reach consumers without material alteration to the cigarette filters incorporated into them.

264. The Product-Manufacturer Defendants designed, manufactured, and sold filtered cigarettes incorporating filters composed primarily of cellulose acetate, a synthetic plastic polymer that persists under ordinary environmental conditions and fragments into progressively smaller plastic particles rather than biodegrading into naturally occurring material.

265. The challenged design is the incorporation of a persistent cellulose acetate plastic filter into a single-use cigarette whose ordinary and intended lifecycle necessarily culminates in the immediate separation and disposal of that filter after the tobacco column has been consumed.

266. The generation of a discarded filter is not an accidental, unusual, or unintended consequence of the product. It is an inherent and unavoidable result of the filtered cigarette operating precisely as designed and being used in an intended and reasonably foreseeable manner.

267. The Product-Manufacturer Defendants knew and intended that filtered cigarettes would be purchased and consumed throughout Denver and knew that a substantial percentage of the resulting filters would be discarded upon streets, sidewalks, parks, parking areas, public rights-of-way, and other developed surfaces from which they would be transported by wind, precipitation, snowmelt, and stormwater runoff onto Denver-owned or maintained property and into Denver's stormwater and drainage infrastructure.

268. The challenged design was a substantial factor in causing physical injury to Denver's property and infrastructure. Because the challenged filters persist after disposal, they physically accumulate upon Denver-owned or maintained property and within gutters, catch basins, storm drains, culverts, drainageways, detention facilities, Cherry Creek, the South Platte River, and other receiving waters.

269. Denver has consequently incurred and continues to incur costs to inspect, investigate, monitor, collect, remove, transport, manage, and dispose of discarded cigarette filters and to clean, maintain, repair, restore, and operate Denver-owned or maintained property and infrastructure affected by their accumulation.

270. The filtered cigarettes were defective and unreasonably dangerous in design because the risks inherent in incorporating a persistent cellulose acetate plastic filter into a single-use cigarette outweighed the benefits, if any, of that design.

271. Factors demonstrating that the risks of the challenged design outweighed its benefits include, without limitation:

272. The usefulness and desirability, if any, of incorporating a persistent cellulose acetate filter into the product;

273. The enormous volume of persistent plastic waste necessarily generated through the ordinary use of filtered cigarettes;

274. The substantial likelihood that discarded filters would accumulate upon public property and enter municipal stormwater and drainage systems;

275. The extended period during which cellulose acetate filters remain in the environment;

276. The physical accumulation, fragmentation, obstruction, contamination, maintenance requirements, and other harms caused by discarded filters;

277. The substantial and recurring costs imposed upon Denver and other public entities;

278. The availability and feasibility of alternative designs, materials, and product configurations capable of materially reducing the persistence and environmental consequences of cigarette filters;

279. The Product-Manufacturer Defendants' technical knowledge, engineering expertise, manufacturing capability, and financial capacity to develop and implement less persistent designs;

280. The relatively low cost of implementing alternative filter materials or designs compared with the substantial public costs imposed by the existing design;

281. The absence of any requirement that cigarettes incorporate cellulose acetate plastic filters;

282. The availability of unfiltered cigarettes and filters incorporating alternative materials; and

283. The Product-Manufacturer Defendants' ability to distribute the costs of safer designs and product-stewardship measures among the entities profiting from filtered-cigarette sales.

284. The Product-Manufacturer Defendants' own research demonstrated that alternative filter designs and materials were technically capable of materially reducing environmental persistence. Among other things, one or more Product-Manufacturer Defendants or their corporate predecessors developed and evaluated filter technologies that degraded, dissolved, or dispersed substantially more rapidly than conventional cellulose acetate filters but declined to implement those technologies as part of ordinary product lines.

285. Denver does not allege that any single alternative design would necessarily have eliminated every discarded cigarette filter. Denver alleges that feasible alternative designs and materials existed that would have materially reduced the persistence, physical accumulation, and resulting municipal burdens caused by the challenged design.

286. Consumer disposal does not constitute unforeseeable misuse or an extraordinary superseding cause because immediate disposal is inherent in the product's intended lifecycle, and the widespread environmental disposal pathway alleged herein was known, statistically predictable, and reasonably foreseeable to the Product-Manufacturer Defendants.

287. The filters causing Denver's injuries were substantially unchanged in their relevant design and composition from the time they left the Product-Manufacturer Defendants' possession until the cigarettes were consumed and the filters were discarded.

288. The Product-Manufacturer Defendants' defective design was a substantial factor in causing the continuing physical invasion of Denver property, physical injury to Denver-owned or maintained infrastructure, interference with Denver's use and operation of that property, and the response and abatement costs alleged herein.

289. This Count is based on the defective design and physical characteristics of the cigarette filters and does not assert a failure-to-warn claim, challenge federally required cigarette labeling, or seek recovery for smoking-related disease, addiction, personal injury, or healthcare expenditures.

290. As a direct and legal result of the defective design, Denver is entitled to recover compensatory damages for physical injury to its property and infrastructure, response and abatement costs attributable to that physical injury, and all other legal relief authorized by Colorado law.

**COUNT V**
**Equitable Restitution Based on Unjust Enrichment**
**(Pled in the Alternative)**

291. Plaintiff realleges each and every allegation contained above as though set forth in full herein.

292. Denver pleads this equitable claim in the alternative to its legal claims and does not seek duplicative recovery.

293. For purposes of this Count, "Restitution Defendants" means those Defendants shown to have received revenues, profits, distributions, avoided expenditures, or other economic benefits from filtered-cigarette sales and related conduct in Denver at Denver's expense.

294. Through the manufacture, marketing, distribution, supply, and sale of filtered cigarettes within Colorado and Denver, the Restitution Defendants received and continue to receive substantial revenues, profits, and other economic benefits.

295. Those economic benefits were obtained and retained through the sale of a single-use product whose ordinary and intended lifecycle necessarily generated a persistent plastic waste component immediately following every use.

296. For decades, the Restitution Defendants knew that a substantial percentage of discarded cigarette filters would be deposited upon public property and transported into publicly owned stormwater and drainage systems. They further knew that Denver would be required to devote personnel, equipment, infrastructure, and financial resources to collecting, removing, managing, and disposing of that waste.

297. Despite that knowledge, the Restitution Defendants continued to retain the economic benefits associated with their filtered-cigarette businesses while declining to internalize the foreseeable post-consumption costs generated by their products.

298. The Restitution Defendants did not establish or adequately fund programs sufficient to collect, remove, transport, manage, or dispose of the persistent plastic filter waste generated through the ordinary use of their products. Nor did they compensate Denver for the substantial costs Denver incurred in performing those activities upon Denver-owned or maintained property and within Denver infrastructure.

299. Instead, the Restitution Defendants shifted and externalized those costs to Denver while retaining economic benefits made possible, in part, by avoiding or minimizing expenditures for safer product designs, product stewardship, post-consumption collection, waste management, remediation, and abatement.

300. Denver did not voluntarily assume those costs as a gift or gratuity to the Restitution Defendants. Denver incurred them to protect, maintain, clean, repair, and operate its own property and infrastructure and to perform governmental and proprietary responsibilities necessitated by the continuing accumulation of the challenged products.

301. The Restitution Defendants' retention of those benefits is unjust because:

302. They created, supplied, distributed, or profited from the product stream generating the persistent plastic waste;

303. They possessed superior knowledge concerning the composition, persistence, disposal pathway, and municipal consequences of cigarette filters;

304. They investigated feasible product modifications and stewardship measures but did not implement measures sufficient to prevent or materially reduce Denver's burdens;

305. They retained the financial benefit of avoiding or minimizing those expenditures;

306. Denver was required to expend its own resources responding to the physical accumulation of filter waste; and

307. Permitting the Restitution Defendants to retain the full benefit while Denver bears the resulting costs would allow them to profit from the continuing externalization of a known component of their products' lifecycle.

308. No valid express contract governs the subject matter of this claim or authorizes the Restitution Defendants to impose their post-consumption waste-management costs upon Denver.

309. Equity therefore requires restitution of the benefits unjustly retained at Denver's expense, in an amount to be established through discovery and proof.

310. The restitution sought is limited to an economic benefit actually received by a Restitution Defendant at Denver's expense and causally attributable to the challenged conduct. Denver does not seek recovery of gross revenues unrelated to the conduct and injuries alleged herein.

311. To the extent necessary to identify and measure the unjust benefit, Denver seeks an accounting of relevant revenues, avoided expenditures, product-stewardship expenditures, environmental-response expenditures, and other relevant financial information.

312. Denver further seeks such nonduplicative equitable and restitutionary relief as the Court determines to be just and authorized by Colorado law.

**COUNT VI**
**Violation of the Colorado Consumer Protection Act**
**(C.R.S. § 6-1-105 and 6-1-113)**

313. Plaintiff realleges each and every allegation contained above as though set forth in full herein.

314. The Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105, prohibits deceptive trade practices in the course of business, including knowingly making false representations as to the characteristics of goods, failing to disclose material information, and engaging in conduct that creates a likelihood of confusion or misunderstanding.

315. Plaintiff's claims under the CCPA are limited to Defendants' deceptive acts and omissions concerning the non-biodegradable plastic composition and environmental persistence of cigarette filters and do not challenge federally mandated health warnings, nicotine disclosures, or smoking-related labeling requirements.

316. Defendants engaged in deceptive trade practices by, inter alia:

a) Failing to disclose that cigarette filters are composed primarily of non-biodegradable plastic materials that persist in the environment after disposal;
b) Omitting material information concerning the long-term environmental persistence of discarded filters; and
c) Promoting and distributing filtered cigarettes without correcting the common consumer misunderstanding that filters are biodegradable or environmentally neutral.
d) minimizing or concealing the extent to which cigarette filters persist in public environments, waterways, stormwater systems, and municipal infrastructure;
e) directing anti-litter messaging toward consumers while omitting Defendants' own role in designing and distributing products that foreseeably and routinely become persistent plastic waste; and
f) continuing to market and distribute filtered cigarette products without adequately disclosing the environmental persistence and municipal impacts associated with discarded cigarette filters.

317. Defendants knew or reasonably should have known that ordinary consumers generally do not understand that cigarette filters are composed primarily of non-biodegradable plastic material that persists in the environment for extended periods following disposal.

318. Defendants further knew or reasonably should have known that consumers commonly perceive cigarette filters to be biodegradable or paper-based because of their appearance, texture, coloration, and marketing presentation.

319. Defendants' deceptive acts and omissions significantly impact the public because filtered cigarette products are mass-market consumer products widely marketed, distributed, and sold throughout Denver and Colorado.

320. Defendants' deceptive conduct has affected and continues to affect a broad segment of the public, including consumers, municipalities, businesses, property owners, and governmental entities throughout Denver and Colorado.

321. As a direct and proximate result of Defendants' deceptive trade practices, cigarette filters composed primarily of non-biodegradable plastic material were widely distributed, consumed, and discarded throughout Denver without adequate disclosure concerning their persistent environmental nature and resulting municipal impacts.

322. Defendants' conduct has caused and continues to cause Denver to incur substantial investigation, monitoring, cleanup, maintenance, remediation, stormwater-management, environmental-management, and abatement costs associated with cigarette filter waste accumulation throughout Denver.

323. Defendants' deceptive trade practices were knowing, intentional, willful, and undertaken with conscious disregard of the foreseeable and continuing accumulation of persistent cigarette filter waste throughout Denver's public property, municipal systems, and waterways.

324. Defendants' conduct constitutes an ongoing course of deceptive trade practices affecting the public interest and a broad segment of consumers and governmental entities throughout Denver and Colorado.

325. Wherefore, Plaintiff prays for relief as set forth below.

**COUNT VII**
**Declaratory Relief**

326. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

327. An actual and justiciable controversy exists between Denver and Defendants concerning their respective rights, duties, obligations, and liabilities arising from the manufacture, marketing, distribution, supply, and sale of filtered cigarettes incorporating persistent cellulose acetate filters.

328. Denver contends that each Defendant's actionable conduct materially caused or contributed to the continuing physical condition affecting Denver-owned or maintained property and infrastructure and that each Defendant is responsible for the resulting injury and costs according to the evidence and Colorado law.

329. Defendants dispute, or are expected to dispute, those contentions and deny responsibility for the continuing physical condition, Denver's response costs, property damage, and requested abatement.

330. Denver seeks a declaration concerning the parties' respective rights and obligations, including each Defendant's responsibility for the continuing condition, the proper allocation of responsibility under Colorado law, Denver's right to recover compensable response and property-damage costs, and the availability of prospective abatement relief.

331. A judicial declaration will resolve an existing controversy, clarify the parties' legal relationships and responsibilities, and assist in determining the prospective measures necessary to address the continuing condition alleged herein.

## VIII. ENTITLEMENT TO INJUNCTIVE AND ABATEMENT RELIEF

332. The continuing manufacture, marketing, distribution, supply, and sale of filtered cigarettes incorporating persistent cellulose acetate filters continues to generate recurring

physical conditions affecting Denver-owned or maintained property and infrastructure and continuing public expenditures.

333. Denver lacks an adequate remedy at law for the continuing and future accumulation that will occur absent prospective relief.

334. Denver seeks such injunctive, equitable, and abatement relief as the Court determines appropriate under the substantive claims established in this action, including reasonable measures to prevent, reduce, manage, remove, or remediate the continuing impacts associated with discarded cigarette filters.

335. Denver's requested prospective relief is consistent with and necessary to carry out its authority and obligations under Denver Revised Municipal Code Chapter 48 and sections 39-17, 54-130(a), 49-553, 56-56, 56-102, and 56-203; its MS4 permit; and its stormwater and solid-waste enforcement framework. Those authorities require or empower Denver to prevent, investigate, regulate, reduce, remove, remediate, and abate litter, rubbish, refuse, garbage, solid waste, and pollutant conditions affecting Denver parks, streets, alleys, public rights-of-way, public places, sewers, stormwater infrastructure, drainageways, watercourses, receiving waters, floodplains, and other Denver-owned or maintained property and infrastructure.

336. Because Defendants continue to introduce the challenged filtered-cigarette products into the Denver market, ordinary municipal enforcement directed solely at individual acts of littering cannot permanently eliminate or materially abate the recurring condition alleged herein. Prospective relief directed toward the entities that design, manufacture, market, supply, distribute, and profit from the continuing product stream is therefore necessary to supplement Denver's existing municipal enforcement and abatement measures.

337. Denver further seeks such additional prospective and equitable relief as the Court determines to be just and authorized by Colorado law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendants, and that the Court award the following relief:

A. Compensatory damages against each Defendant according to proof and the allocation principles applicable under Colorado law;

B. Recovery of all past municipal response costs associated with investigating, monitoring, collecting, removing, transporting, managing, and disposing of discarded cigarette filters;

C. Recovery of all future municipal response costs reasonably anticipated as a result of the continuing manufacture, marketing, distribution, sale, and accumulation of filtered cigarettes incorporating persistent cellulose acetate filters;

D. Recovery of all costs associated with the inspection, maintenance, operation, repair, cleaning, and protection of Plaintiff's streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage systems, waterways, and other public property affected by discarded cigarette filters;

E. Recovery of all environmental response, investigation, monitoring, engineering, planning, regulatory-compliance, enforcement, administrative, remediation, and abatement costs incurred pursuant to Denver's MS4 permit, the Denver Revised Municipal Code, Denver's solid-waste and stormwater enforcement framework, and other applicable law;

F. Restitution, an accounting, and other restitutionary relief to the extent authorized by Colorado law;

G. Declaratory relief determining the parties' respective rights and obligations;

H. Appropriate injunctive, equitable, and abatement relief tied to the substantive claims established in this action and consistent with Denver's authority and obligations under Denver Revised Municipal Code Chapter 48 and sections 39-17, 54-130(a), 49-553, 56-56, 56-102, and 56-203, including reasonable measures to prevent, reduce, manage, remove, or remediate continuing cigarette-filter impacts;

I. Prejudgment interest where authorized by law;

J. Post-judgment interest as permitted by law;

K. Costs of suit;

L. Reasonable attorneys' fees and litigation expenses only to the extent independently authorized by statute, rule, contract, or other applicable law; and

M. Such other and further legal, equitable, declaratory, injunctive, or monetary relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2026

*s/ Joseph Zonies*
Joseph J. Zonies, Esq., No. 29539
**ZONIES LAW LLC**
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel. (720) 464-5300
Fax (720) 464-5357
jzonies@zonieslaw.com

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
**GROSSMAN & KELLY, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City and County of Denver*

Plaintiff's Address:

City and County of Denver
c/o Denver City Attorney Michiko Ando Brown
201 West Colfax Avenue, Dept. 1207
Denver, Colorado 80202

DATE FILED
August 7, 2026 10:10 AM
FILING ID: D1E21CEA9E16C
CASE NUMBER: 2026CV32869

☐ **FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No:<br><br>Division: |

**Attorneys for Plaintiff**

Joseph Zonies, #29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
GROSSMAN & KELLY, LLP
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
MCINTYRE SCHNIEDERS
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

__ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

_X This party is seeking a monetary judgment against another party for more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

**OR**

__ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. _X This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Dated this 7th day of August, 2026.

Respectfully submitted,

*s/ Joseph Zonies*

Joseph Zonies, #29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)

chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
**GROSSMAN & KELLY, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City and County of Denver*

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 7, 2026 10:10 AM<br>FILING ID: D1E21CEA9E16C<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No.<br><br>Division: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:** **Peerless Products, LLC, Thomas Edwin Kleinschmidt, Registered Agent, 717 S. Sierra Madre St., Colorado Springs, CO 80905**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 7th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 BANNOCK STREET<br>DENVER, CO 80202 | DATE FILED<br>August 7, 2026<br>CASE NUMBER: 2026CV32869<br>▲COURT USE ONLY▲ |
| Plaintiff: C And C Of Denver<br><br>V<br><br>Defendant: Philip Morris USA Inc et al | **Case No. 26CV32869**<br><br>Courtroom: **215** |
| **PRETRIAL ORDER** | |

**Plaintiff's counsel or the pro se Plaintiff shall serve copies of this Pretrial Order on Defendant(s) and all future counsel/parties in this case.** A certification of compliance with this portion of the Order shall be filed within 7 days of providing notice.

## I. ***PRO SE* PARTIES**

1. It is recommended that parties appearing without counsel contact **Colorado Legal Services / Metro Volunteer Lawyers, 1905 Sherman Street, Suite 400, Denver, Colorado, 80203, Phone (303) 837-1313** to determine whether they qualify for free or reduced-cost legal representation.
2. On *pro se* cases, the Court orders the Responsible Attorney, as defined in C.R.C.P. 16(b)(2), to notice a Case Management Conference. *See* C.R.C.P. 16.1(j).
3. This Division requires Case Management Conferences in all cases in which one or more parties are proceeding *pro se,* whether the case is governed by C.R.C.P. 16 or C.R.C.P. 16.1.

## II. **CASE MANAGEMENT ORDER**

1. All parties shall participate, in good faith, in preparing the Proposed Case Management Order pursuant to C.R.C.P. 16(b). To the extent that any party does not so participate, those circumstances shall be explained in the Proposed CMO.

## III. **<u>CASE MANAGEMENT CONFERENCE</u>**

1. At the same time as the notice to set trial, the responsible attorney shall file a notice to set a case management conference, to be held no later than 49 days after the case is at issue. The responsible attorney shall call the court on the day and time designated in the notice to set, receive potential dates from the court, confer with all parties regarding the dates, and promptly notify the court clerk by phone of which date the parties have selected.

2. Lead counsel and unrepresented parties, if any, shall attend the case management conference in person, unless a timely request is made and granted to appear virtually. If all parties are represented by counsel, counsel may timely submit a proposed CMO and jointly request the court to dispense with a case management conference pursuant to C.R.C.P. 16(d)(3).

3. At the conference, parties and counsel shall be prepared to discuss the proposed CMO, issues requiring resolution, and any special circumstances of the case.

## IV. **<u>TRIAL SETTINGS</u>**

1. In the caption of the notice to set trial, indicate 1) whether it is to be set for a jury trial or a court trial and 2) the number of days requested.

2. All cases **<u>shall be set for trial not later than 14 days</u>** from the date the case is at issue. If cases are not set for trial within this deadline, the Court will issue an order to show cause as to why the case should not be dismissed.

3. No case will be set more than **a year from filing of the complaint or other initiating pleading, or for longer than 5 days,** without the Court's permission. Before permission is granted, there may be a conference between counsel and the Court as to why a more distant trial date or longer trial is necessary.

4. It is the Court's general practice to set a Pretrial Conference. Typically, the Court will reach out to counsel, at the time of filing the TMO, to schedule the PTCF. Lead counsel must attend in person unless excused by the Court.

5. Motions to continue trial dates, even if stipulated, will only be granted for good cause shown.

## V. ALTERNATIVE DISPUTE RESOLUTION AND SETTLEMENT

1. This Court encourages parties to engage in Alternative Dispute Resolution ("ADR") when they are otherwise unable to reach settlement. However, the Court does not automatically issue an ADR Order.

2. A notice of settlement should be submitted promptly. However, the Court will not vacate a trial date based on a settlement agreement until the parties have submitted a written stipulation, or unopposed motion, dismissing the case. Dismissal documents should be filed within 14 days of notice of settlement, absent unusual circumstances.

## VI. DUTY TO CONFER

The Court expects complete and good faith compliance with C.R.C.P. 121, §1-12(1) and (5), and §1-15(8).

1. Counsel are expected to initiate efforts to confer long enough before the anticipated filing date to enable meaningful two-way communication. Certification that a telephone call, e-mail or text was directed to opposing counsel shortly before the pleading was filed and that "no response" was received is not a good faith effort.

2. It is the expectation of the Court that counsel confer either face-to-face or on the telephone; the Court regards a letter or e-mail message to constitute initial "notice," but not a sufficient attempt to confer.

3. If attempts to confer are unsuccessful, the certification must specifically describe the attempts.

4. The relief sought in any pleading not in compliance with C.R.C.P. 121 and this Order will be denied.

## VII. DISCOVERY AND DISCOVERY MOTIONS

1. Discovery shall be conducted in accordance with the attached Discovery Protocol.

2. If there is a discovery dispute, counsel are expected to confer in a meaningful way to try to resolve it, in whole or in part. (See § VI, above).

3. If the parties need immediate resolution of a discovery issue, and if the issue is discrete, including one that arises during a deposition, they are encouraged

to call the Court at (303) 606-2397, and an effort will be made to hear the matter orally and immediately via WebEx, or otherwise on an expedited basis.

4. If the dispute cannot be resolved informally or by expedited oral motion, a written motion, no more than **3 pages** in length, should be submitted to the Court, including certification of compliance with C.R.C.P. 121 § 1-15(8). A response may be filed no later than ***5 days*** from the date of service, also limited to 3 pages. No reply will be permitted.

5. The Court will assess the motion and will either rule on the pleadings or notify the parties that a hearing (in person) is required. The Court will set any required hearing as quickly as possible. If counsel cannot agree on a date, the Court will set the hearing date.

## VIII. OTHER MOTIONS

1. **Extensions of Discovery Deadlines:** Stipulated agreements to extend the dates for filing discovery responses, objections, and disclosures of no more than 7 days do not need to be filed with the Court. Extensions for more than 7 days, even if stipulated, will be granted only upon a showing of good cause.

2. **Summary Judgment:** All motions for summary judgment must be filed no later than **91 days (13 weeks) before trial and there shall be no separate deadline for the filing of cross-motions as reflected in C.R.C.P. 56.** The Court generally will not grant extensions of time to file summary judgment motions. This is because the late filing of motions for summary judgment does not allow the Court sufficient time to rule in advance of trial. Failure to comply with the motions deadlines stated in this order may result in a delayed ruling or no ruling from the Court before trial.

3. **Motions in Limine**: Motions in limine must be filed no later than **35 days before trial** unless a different time is permitted by court order, and any responses shall be filed at least **28 days before trial (meaning responses are due 7 days after the motion is filed). No replies shall be filed.**

4. **Expert Challenges:** Motions challenging expert testimony pursuant to C.R.E. 702 must be filed no later than **70 days before trial.** All other pretrial motions must be filed not later than 35 days before trial unless otherwise ordered by the Court.

5. If an expedited ruling is desired on any motion, the moving party must specifically request an expedited schedule in the original motion and the moving party must contact the Clerk of Courtroom 215 to advise of this request. The court may sua sponte expedite the briefing schedule pursuant to C.R.C.P. 121 § 1-15.

6. The Court may rule on motions without hearing, pursuant to C.R.C.P. 121, or the Court may order a hearing prior to trial.

7. **Do not combine motions or incorporate your own motions into a response or reply.**

8. The requirements of C.R.C.P. 121 § 1-15 concerning the content and length of briefs will be strictly enforced.

## IX. TRIAL MANAGEMENT ORDER AND PRETRIAL CONFERENCES

1. The Trial Management Order ("TMO") must comply with the requirements of C.R.C.P. 16 and must be filed at least **28 days** before trial. **ALL parties must participate in the preparation of the TMO.**

2. Lead counsel shall attend any Pretrial Conference, and be prepared to discuss, in addition to any issues with the TMO itself, any issues or concerns arising under the remaining sections of this Order.

## X. BEFORE TRIAL

1. **Exhibits:** All exhibits must be pre-marked. The parties are encouraged to cooperate in submitting a single set of exhibits, each with numbers. If the parties are unable to submit a single set of exhibits, Plaintiffs shall use numbers and defendants shall use letters to designate their exhibits, except that if defendants anticipate more than 26 exhibits (A-Z), they should number their exhibits starting with 500. Plaintiffs and defendants shall not mix numbers and letters, even for related exhibits (e.g. 1(a), 1(b), 1(c), etc.). The civil action number of the case should be placed on each of the exhibit labels.

   The parties shall exchange copies of their pre-marked exhibits, **no later than 21 days** before trial. **Authenticity of all identified and exchanged exhibits shall be deemed admitted unless objected to in writing no later than 7 days after receipt of the exhibits.**

   Demonstrative exhibits, other than those subject to Rule 26(a)(2)(B)(I)(d), shall be exchanged before the Pretrial Conference and any disputes brought to the Court's attention at the PTCF.

   The Court expects counsel to stipulate to the admission of every exhibit as to which there is not a good faith objection. Only where counsel has not had a reasonable opportunity to view an exhibit in advance will trial be interrupted for such a review, which should be rare.

Counsel must also provide at least three (3) complete sets of exhibits, whether stipulated or not: one for the Court, one for each opposing side's counsel, and one for the witness stand (which will be the official copy that goes to the jury). If exhibits are voluminous and counsel wants to present them electronically in lieu of hard copies, raise the issue in the TMO, including whether the parties plan to share an electronic presentation system.

**Please note the specific procedures regarding the handling of exhibits post-trial or post-hearing, at § XV(8), *infra*.**

2. **Exhibit Lists:** Counsel for each side shall prepare an index of exhibits that counsel expects to offer, in a grid or spreadsheet format, that identifies with specificity the exhibit by number and description. The exhibit list shall specify whether or not the exhibit is received by stipulation, and shall allocate columns with the headings "Identified," "Offered," and "Received."

3. **Witness lists:** Counsel for each side shall prepare a list of witnesses who will and may be called that the Court can read to the jury at the beginning of the trial. This list shall be in addition to any prior designation of witnesses. In addition to listing the names of the witnesses, the list may also specify the witnesses' title or degree and employment (e.g., Dr. Murray, M.D., Children's Hospital) but no other identifying information should be included (e.g., address, phone number etc.).

4. **Orders of Proof:** Counsel shall confer and prepare a joint order of proof which identifies each counsel's good faith estimate of the order in which witnesses will be presented and shall specify separately the time required for direct and cross-examination of each witness. The time estimates must include re-direct and re-cross. The cumulative time for witness examinations cannot exceed the time allocated for the trial; the total time allocation shall also account for the time necessary for jury selection, opening statements, regularly scheduled breaks, the jury instruction conference, and closing arguments. The Court reserves the right to enforce the time estimates stated in the order of proof.

5. **Depositions:** The reading of depositions in lieu of live testimony is discouraged. However, if you are going to do so, opposing counsel must be notified by proper identification of designated portions **no later than 28 days prior to trial.** Any other party may then provide its designations **no later than 14 days before the trial date,** with all reply designations by the proponent then made **no later than 7 days before the trial date.** Objections to all or part of the deposition testimony offered must be made not later than **5 days prior to trial** and must cite page, line, and the specific evidentiary grounds supporting the objection. In all other respects, C.R.C.P. 16(f)(3)(VI)(D) shall be complied with, including providing a copy of the deposition, with the proposed testimony highlighted, to the Court ***at least*** **3 days prior to trial—the more objections there are for the Court to**

**address, the more notice should be given. The same rules apply to both videotaped and transcribed depositions.** When applicable, counsel is required to provide someone to read testimony.

While C.R.C.P. 32(a)(2) and (3) permit the use of some depositions for purposes other than impeachment of a deponent under certain circumstances, any such extended use at trial requires prior compliance with this paragraph 5, above.

Original depositions will remain sealed until counsel requests at trial that they be unsealed.

6. **Special Equipment:** If you need a projector, VCR, extension cord, a monitor, a screen, or any other form of audio-visual equipment, you must provide it.

## XI. TRIAL BRIEFS

Trial briefs may be filed, although they are discouraged for jury trials unless they address evidentiary issues--other than those previously raised in limine--for the Court to be prepared to consider. They should be concise and should not repeat previously filed pleadings or motions. Trial briefs must be filed **no later than 7 days before the trial date.**

## XII. JURY INSTRUCTIONS

1. **Stipulated Jury Instructions and Verdict Forms:** Counsel shall meet and confer in a good faith effort to stipulate to jury instructions and verdict forms. Counsel for the first party to demand a jury (and whose demand has not been withdrawn) shall file stipulated jury instructions and verdict forms **no later than five (5) days before trial.** There is no need to cite legal authority on any stipulated jury instructions or verdict form.

2. **Disputed Jury Instructions and Verdict Forms:** Counsel for any party who requests a jury instruction or verdict form as to which there is no agreement shall, **no later than five (5) days before trial**, file such disputed instructions and forms, together with a recitation of legal authority upon which each is based.

3. All jury instructions and verdict forms filed electronically with the Court shall be in an editable format.

4. Do not submit the basic introductory instructions, other than a statement of the case in the form of a stipulated Instruction 2:1. If the parties cannot agree, one 2:1 instruction shall be submitted with highlights of the language upon which

the parties cannot agree. Use different highlighting to distinguish each party's position.

## XIII. JUROR NOTEBOOKS

1. **Juror Notebooks:** Each trial juror will be provided with a juror notebook, by the Court. The court provides small (1½ inch) binders. If the Court permits exhibits to be given to jurors, each party must provide a sufficient number of copies for the jury and any alternates. The Court only allows non-voluminous exhibits to be placed in the notebooks. Each page must be three-hole punched in advance so it can be placed in a notebook and separated by tabs. Generally, the Court will only permit stipulated exhibits to be provided to the jury; however, if the parties are unable to agree on whether a particular exhibit should be given to the jury, they may address this issue during trial.

2. **Glossary of Terms**: If there are any scientific or other specialized terms which will be used repeatedly during the trial, those should be set forth, with an agreed-upon definition. If the parties have a legitimate dispute about the definition of any term, just the term should be listed.

3. **Timeline of Events**: If a timeline of events would be helpful for the jury, a stipulated timeline may be included in the juror notebooks.

## XIV. JURY SELECTION

1. Each side will have 20 minutes for *voir dire*, unless additional time is requested and permitted in advance of the first day of trial. In multi-party cases, time must be divided between all parties on one side of the case.

2. The Court will ask general *voir dire* questions before counsel's *voir dire.*

3. **Seven days before trial,** questions that a party would like the Court to ask (because, for example, the issue is sensitive), may be electronically filed.

4. *Voir dire* will be conducted from the podium. Argumentative questions during *voir dire* are not allowed. Unless requested by counsel, *voir dire* will not be reported.

5. Challenges for cause will be exercised at the bench upon the conclusion of all parties' *voir dire.*

6. Depending on the anticipated length of trial, there may be one or two alternate jurors seated. The Court will advise counsel at the pretrial conference how the alternate(s) will be designated.

## XV. CONDUCT OF TRIAL

1. **Scheduling/Use of Time**:

   a. The trial day will start at 8:30 a.m. and end at 5:00 p.m. There will be a morning and an afternoon break of 15 to 20 minutes each. Lunch will run from approximately noon to 1:15 p.m.

   b. Counsel must be in court by 8:00 a.m. on the first day of trial so that they may discuss anything with the Court that needs to be addressed before the trial begins. Thereafter, the Court will typically require that counsel be in court 15 minutes before the jury has been instructed to return in order to handle any preliminary issues.

   c. Counsel are responsible for having witnesses scheduled so as to prevent any delay in the presentation of testimony or running out of witnesses before 5:00 p.m. on any trial day. There shall be no more than a five (5) minute delay between witnesses. Delays may be attributed to a party's time allocation for case presentation.

2. **Opening Statements**: Each side will have 20 minutes for opening statement, unless additional time is requested and granted. In multiple-party cases, this time must be divided between the parties on one side of the case.

3. **Questioning Witnesses**: The Court does not permit questioning beyond re-cross. All questioning must be done from the podium unless permission is granted to approach the witness or the bench. Counsel are advised that the FTR recording system in Courtroom 215 works best when all counsel and witnesses speak directly into the provided microphones. This ensures the most complete and accurate record of the proceedings, for appellate purposes and otherwise.

4. **Juror Questions:** Juror questions will be permitted when all questions by counsel have been asked of a particular witness. Counsel may ask brief follow-up questions after juror questions have been asked, but only as to issues raised by the jurors' questions.

5. **Objections:**

   a. Please make objections professionally: be brief, concise and specific.

b. Speaking or argumentative objections are not permitted.

c. Do not automatically respond to an objection; if the Court wants a response to an objection before ruling, the Court will ask for one.

6. **<u>Jury Instruction Conference:</u>** The Court and counsel will work on jury instructions at least one evening during trial, typically after plaintiff has rested, as well as during other breaks in the trial. The Court may rely upon counsel to edit jury instructions as necessary, so each side should have the equipment and personnel readily available to do so. Once the final jury instructions are assembled, the Court will allow counsel to make a record of objections to the instructions, and to tender any additional proposed instructions.

7. **<u>Closing Arguments</u>**: Each side will have 30 minutes for closing argument, unless additional time is requested and granted. In multiple-party cases, this time must be divided between the parties on one side of the case.

8. **<u>Uploading Exhibits to ICCES Post-Hearing and Post-Trial</u>:** With the advent of electronic filing and electronic submission of the appellate record, the court no longer maintains custody of hard copies of exhibits at the conclusion of a trial or hearing. However, there must be a record of all exhibits offered and/or received in evidence. Accordingly, **the following mandatory procedures will be followed:**

a. When the trial or hearing is concluded, each party will withdraw any paper or physical exhibits or depositions which that party marked, whether or not admitted into evidence, from the courtroom.

b. Each party will maintain in its custody the withdrawn exhibits and/or depositions, without modification of any kind, until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

c. **Electronic versions of all exhibits admitted into evidence and all exhibits offered but not admitted into evidence shall be uploaded into ICCES by the party which marked the exhibit within 7 days of the conclusion of the trial or hearing.** Unless each exhibit uploaded has a clearly legible exhibit sticker which conforms with § IX.1, *supra,* the uploading party shall file a caption sheet indicating the exhibit number or letter(s) which also bears the civil action number of the case. The uploaded exhibits which were admitted into evidence shall be in exactly the form they were in at the conclusion of the evidence, including any markings, notations, etc., added to the exhibit by any witness.

d. **It is the responsibility of counsel to diligently follow these procedures to assure that an accurate trial and appellate record is preserved.**

9. **Use of Freelance Court Reporters:** Use of freelance reporters in civil cases shall be governed by Chief Judge Directive 05-03.

10. **Interpreters**. If any party or witness requires an interpreter that the Court is required to provide under C.J.D. 06-03, you must alert the Court Judicial Assistant for Courtroom 215, Glenda Catanach, of the need for the interpreter, the language needed, and the anticipated date and length of the testimony of the witness who is limited-English proficient, by calling (303) 606-2397 **at least 28 days before trial for Spanish interpreters and no less than 49 days for languages other than Spanish**. Failure to do so may result in the Court's inability to schedule an interpreter and, if so, the witness may not be permitted to testify.

11. The Court is familiar with the difficulties and anxieties of trial practice. We are here to assure that the parties have a full and fair opportunity to present their case, with a minimum of unnecessary stress. Should any questions arise, please contact the Court Judicial Assistant for Courtroom 215, Glenda Catanach, at (303) 606-2397.

DATED: August 7, 2026

BY THE COURT:



A. Bruce Jones
Denver District Court Judge

# DISCOVERY PROTOCOL

Counsel are reminded that all discovery responses shall be made in the spirit and with the understanding that the purpose of discovery is to elicit facts and to get to the truth. The Colorado Rules of Civil Procedure are directed toward securing a just, speedy and inexpensive determination of every action. The discovery process shall not be employed to hinder or obstruct these goals nor to harass, unduly delay or needlessly increase the cost of litigation.

## WRITTEN DISCOVERY

These discovery protocols shall be considered as part of the responsibility of parties and counsel to comply with the Rules of Civil Procedure relating to discovery.

1. The parties should refrain from interposing repeated boilerplate type objections such as "overbroad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence" and other similar objections. In the event any such objections are made, they shall be followed by a clear and precise explanation of the legal and factual justification for raising such an objection. Additionally, if the objecting party otherwise responds to the discovery request but does so subject to or without waiving such an objection, that party shall describe with reasonable specificity the information which may be available but which is not being provided as a result of the objection raised.

2. When a responding party claims not to understand either a discovery request or the meaning of any words or terms used in a discovery request, that party shall, within fourteen (14) days of receiving the discovery request, seek clarification of the meaning from counsel who served the discovery. A failure to seek such clarification shall be considered a violation of this Order for Discovery Protocol.

3. A discovery response which does not provide the information or material requested but promises to do so at some point in the future will be treated as the equivalent of no response unless the party so responding provides a specific reason for the information not being produced as required by the Rules of Civil Procedure, and also provides a specific date by which such information will be produced.

4. A response to a discovery request that does not provide the information or material requested but rather states that the party is continuing to look for or search for such information or material will be treated as the same as no response unless that party provides a clear description of where such information or material is normally located, who is normally in custody of such information or material, where the party has searched, the results of the search, as well as the identity of all persons who have engaged in such a search. The responding party shall also provide a clear explanation of the ongoing search and a specific date by which the search will be complete.

5. Whenever a party objects to discovery based upon a claim of attorney/client privilege, work product protection or any other privilege or protection, that party shall produce a detailed privilege/protection log that includes at least the following for each such item for which privilege is claimed:

a. The information required by C.R.C.P. 26(b)(5);

b. The date of the information or material;

c. All authors and recipients; and

d. The specific privilege or protection which is claimed.

e. The proponent of the privilege has the burden of establishing that privilege. Failure to comply with this paragraph 5 and Order for Discovery Protocol will constitute a waiver of the claimed privilege.

**DEPOSITIONS**

1. Depositions shall be conducted in compliance with the Colorado Rules of Civil Procedure.

2. During all depositions, counsel shall adhere strictly to C.R.C.P. 30(d)(1) and (3). No objections may be made, except those which would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors, irregularities), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition).

3. There shall be no speaking objections. It is inappropriate and prohibited for an attorney, during the course of questioning, to advise a witness to answer "if you know," or "if you remember." It is similarly prohibited for an attorney during questioning to advise a witness not to speculate. All such statements shall be considered speaking objections. All deponent preparation shall be conducted prior to the commencement of the deposition and shall not take place during the course of the deposition.

4. It is appropriate for the deponent to request clarification of a question.

5. A deponent and an attorney may not confer during the deposition while questions are pending. Similarly, neither a deponent nor counsel for a deponent may interrupt a deposition when a question is pending or a document is being reviewed, except as permitted by C.R.C.P. 30(d)(1).

6. Counsel shall refrain from excessive objections that have the purpose or effect of disrupting the flow of questioning or the elicitation of testimony.

7. Counsel may instruct the deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under paragraph 3 of C.R.C.P. 30(d). Whenever counsel instructs a witness not to answer a question, counsel shall state on the record the specific reason for such an instruction, the specific question, part of a question or manner of asking the question upon which counsel is basing the instruction not to answer the question.

| | |
|---|---|
| DISTRICT COURT<br>CITY & COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 7, 2026<br>CASE NUMBER: 2026CV32869<br>▲ **COURT USE ONLY** ▲ |
| Plaintiff: C And C Of Denver<br><br>V<br><br>Defendant: Philip Morris Inc et al | **Case Number: 26CV32869**<br><br>**Courtroom: 215** |

**DELAY REDUCTION ORDER**

All civil courtrooms are on a delay reduction docket.

**IF AN ATTORNEY OR PRO SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE. THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(B)(2).**

A. In all civil actions, the following deadlines must be met:

1. **Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

2. **Default:** Motions for default must be filed within **14 days** after default has occurred, and must comply with C.R.C.P. 121(c) § 1-14. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3. **Trial Setting:** The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **14 days** from the date the case is at issue. Counsel may call the courtroom to set trials only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

4. **Cases filed under C.R.C.P. 16:**

a) **Case Management Conference:** The notice to set trial must also include a notice to set a Case Management Conference to be held no later than **49 days** after the case is at issue. Counsel may call the courtroom to set case management conferences only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

b) **Proposed Case Management Order:** At least **7 days** before the Case Management Conference, the parties must file a proposed Case Management Order.

c) **Waiver of Case Management Conference:** If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order. Unless such a request has been granted, counsel must appear for the case management conference.

5. **Cases filed under C.R.C.P. 16.1:**

**Certificate of Compliance:** Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required.

B. Additionally, in all civil actions the following provisions apply:

1. **Service of this Order.** The Plaintiff or Responsible Attorney must send a copy of this Order to all other parties who enter their appearance.

2. **Related Cases.** An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form, available in Room 256 of the City and County Building or on line at:
https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

Date: August 7, 2026

BY THE COURT:

A. Bruce Jones
Denver District Court Judge

**DISTRICT COURT, COUNTY OF DENVER, COLORADO**
**1437 Bannock Street, Denver, CO 80202**

**Plaintiff**
The City and County of Denver

**v.**

**Defendant**
Philip Morris USA, Inc.; Altria Group, Inc.; R.J. Reynolds Tobacco Company; Reynolds American Inc.; Santa Fe Natural Tobacco Company, Inc.; British American Tobacco p.l.c.; ITG Brands, LLC; Liggett Group LLC; Liggett Vector Brands LLC; Peerless Products, LLC

**Affidavit of Service**

DATE FILED
August 7, 2026 4:58 PM
FILING ID: D440A8E7ABDEA
CASE NUMBER: 2026CV32869

**Case # 2026CV032869**

Received on **08/07/2026 9:58 AM**

I, **Eric Bjorklund**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/7/2026** at **02:49 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND** on **Peerless Products, LLC** at **717 S Sierra Madre St, Colorado Springs, CO 80903.**

**By Corporate Service to: Thomas Kleinschmidt - Registered Agent**

**Gender: Male Age: 54 Height: 6'2" Weight: 200 Race: White Hair: Brown Other: No glasses**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/07/2026 at Colorado Springs, CO

**Eric Bjorklund, Process Server**

**Work Order Id: 15500077**
**Client Reference: Denver v. Peerless**

<table>
<tr><td>DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202</td><td rowspan="2">DATE FILED<br>August 13, 2026 3:07 PM<br>FILING ID: 901522AB539B6<br>CASE NUMBER: 2026CV32869<br><br>▲COURT USE ONLY▲<br><br>Case Number: 2026CV32869<br><br>Courtroom: 215</td></tr>
<tr><td>PLAINTIFF: THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>DEFENDANTS: PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC.</td></tr>
<tr><td colspan="2">Attorneys for Plaintiff:<br>Joseph J. Zonies, No. 29539<br>ZONIES LAW LLC<br>3900 Mexico Ave., Suite 300<br>Denver, CO 80210<br>Phone: (720) 464-5300<br>Fax: (720) 464-5357<br>jzonies@zonieslaw.com<br><br>David Grossman (NY No. 2693919) (pro hac vice forthcoming)<br>dgrossman@grossmankelly.com<br>GROSSMAN & KELLY, LLP<br>1248 Montauk Highway<br>West Islip, New York 11795<br>Telephone: (631) 314-4996<br><br>Christopher Schnieders (KS No. 22434) (pro hac vice forthcoming)<br>chris@mcintyreschnieders.com<br>Noble McIntyre (OK No. 16359) (pro hac vice forthcoming)<br>noble@mcintyrelaw.com<br>Mario D'Angelo (NY No. 2178044) (pro hac vice forthcoming)<br>mdesq@mcintyreschnieders.com<br>MCINTYRE SCHNIEDERS<br>6731 W. 121st St.<br>Overland Park, Kansas 66209<br>Telephone: (913) 627-9416</td></tr>
<tr><td colspan="2">CERTIFICATE OF COMPLIANCE PER PRETRIAL ORDER</td></tr>
</table>

As per the Pretrial Order dated August 7, 2026, I hereby certify that a copy of that Order was served via First-Class Mail to Thomas E. Kleinschmidt, Registered Agent for Defendant Peerless Products, LLC, on August 11, 2026.

In addition, copies of the Delay Reduction Order and the Proof of Service RE Peerless Products, LLC were also included in the service.

Dated: August 13, 2026

*s/ Joseph Zonies*
Joseph J. Zonies, Esq., No. 29539
**ZONIES LAW LLC**
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel. (720) 464-5300
Fax (720) 464-5357
jzonies@zonieslaw.com

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
**GROSSMAN & KELLY, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City and County of Denver*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 13th, 2026, a true and correct copy of this Certificate was filed and served via Colorado Court E-Filing on all counsel of record.

__*s/ Joseph Zonies*_______________

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:** **ITG Brands, LLC, Corporation Service Company, Registered Agent, 1900 W. Littleton Blvd., Littleton, CO 80120**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

# DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Plaintiff**
THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**
PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

Received on **08/17/2026 10:23 AM**

I, **Kaylie Nez**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **03:50 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **ITG Brands, LLC** at **1900 W Littleton Blvd, Littleton, CO 80120.**

**By Registered Agent Service to: Shannon White - Process Clerk**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Elizabeth, CO

**Kaylie Nez, Process Server**

**Work Order Id: 15569513-02**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: R.J. Reynolds Tobacco Company, Corporation Service Company, Registered Agent, 1900 W. Littleton Blvd., Littleton, CO 80120**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*
Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

## DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Plaintiff**
THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**
PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

Received on **08/17/2026 10:23 AM**

I, **Kaylie Nez**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **03:50 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **R.J. Reynolds Tobacco Company** at **1900 W Littleton Blvd, Littleton, CO 80120.**

**By Registered Agent Service to: Shannon White - Process Clerk**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Elizabeth, CO

**Kaylie Nez, Process Server**

**Work Order Id: 15569513-07**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: Santa Fe Natural Tobacco Company, Inc., Corporation Service Company, Registered Agent, 1900 W. Littleton Blvd., Littleton, CO 80120**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

## DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

**Plaintiff**

THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**

PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

Received on **08/17/2026 10:23 AM**

I, **Kaylie Nez**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **03:50 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Santa Fe Natural Tobacco Company, Inc.** at **1900 W Littleton Blvd, Littleton, CO 80120.**

**By Registered Agent Service to: Shannon White - Process Clerk**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Elizabeth, CO

______________________________
**Kaylie Nez, Process Server**

**Work Order Id: 15569513-08**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: Philip Morris USA Inc., United Agent Group, Inc., Registered Agent, 201 E. 4th Street, Loveland, CO 80537-5601**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*
Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

## DISTRICT COURT OF COLORADO, COUNTY OF DENVER
1437 Bannock, Denver, CO 80202

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

**Plaintiff**
THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**
PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

Received on **08/17/2026 10:23 AM**

I, **Howard Pinnick**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **08:10 AM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Philip Morris USA Inc.** at **201 E 4th St, Loveland, CO 80537.**

**By Registered Agent Service to: Kaity Longstreth - Administrative Associate**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Fort Collins, CO



**Howard Pinnick, Process Server**

**Work Order Id: 15569513-05**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:** **Altria Group, Inc., United Agent Group Inc., Registered Agent, 201 E. 4th Street, Loveland, CO 80537-5601**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

# DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Plaintiff**
THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**
PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

Received on **08/17/2026 10:23 AM**

I, **Howard Pinnick**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **08:10 AM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Altria Group, Inc.** at **201 E 4th St, Loveland, CO 80537.**

**By Registered Agent Service to: Kaity Longstreth - Administrative Associate**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Fort Collins, CO

**Howard Pinnick, Process Server**

**Work Order Id: 15569513-01**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:** **Liggett Vector Brands LLC, CT Corporation System, Registered Agent, 7700 E. Arapahoe Rd., Ste 220, Centennial, CO 80112**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*
Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

## DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Plaintiff**
THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**
PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

**Affidavit of Service**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Case # 26CV32869**

Received on **08/17/2026 10:23 AM**

I, **Kaylie Nez**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/19/2026** at **01:24 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Liggett Vector Brands, LLC** at **7700 E Arapahoe Rd, Suite 220, Centennial, CO 80112.**

**By Registered Agent Service to: Taina Pelham - Intake Specialist**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Elizabeth, CO

**Kaylie Nez, Process Server**

**Work Order Id: 15569513-03**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT:** **Liggett Group LLC, CT Corporation System, Registered Agent, 7700 E. Arapahoe Rd., Suite 220, Centennial, CO 80112**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

## DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

**Affidavit of Service**

**Case # 26CV32869**

DATE FILED
August 20, 2026 3:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Plaintiff**

THE CITY AND COUNTY OF DENVER, a municipal corporation

v.

**Defendant**

PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

Received on **08/17/2026 10:23 AM**

I, **Kaylie Nez**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/19/2026** at **01:24 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Liggett Group LLC** at **7700 E Arapahoe Rd, Suite 220, Centennial, CO 80112.**

**By Registered Agent Service to: Taina Pelham - Intake Specialist**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Elizabeth, CO

**Kaylie Nez, Process Server**

**Work Order Id: 15569513-04**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

<table>
<tr><td>DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202</td><td rowspan="2">DATE FILED<br>August 20, 2026 3:30 PM<br>FILING ID: D92A2FBE7E850<br>CASE NUMBER: 2026CV32869<br><br>▲COURT USE ONLY▲</td></tr>
<tr><td>PLAINTIFF: THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>DEFENDANTS: PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC.</td></tr>
<tr><td></td><td>Case No. 26CV32869<br><br>Courtroom: 215</td></tr>
<tr><td colspan="2">DISTRICT COURT CIVIL SUMMONS</td></tr>
</table>

**TO THE ABOVE NAMED DEFENDANT: Reynolds American Inc., Corporation Service Company, Registered Agent, 2626 Glenwood Ave., Suite 550, Raleigh, NC 27608**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 17th day of August 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

# DISTRICT COURT OF COLORADO, COUNTY OF DENVER

1437 Bannock, Denver, CO 80202

## Affidavit of Service

**Case # 26CV32869**

DATE FILED
August 20, 2026 [illegible]:30 PM
FILING ID: D92A2FBE7E850
CASE NUMBER: 2026CV32869

**Plaintiff**

THE CITY AND COUNTY OF DENVER, a municipal corporation

**v.**

**Defendant**

PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCT

Received on **08/17/2026 10:23 AM**

I, **In Motion Process Service**, being duly sworn, depose and say, I have been duly authorized to make service of the document(s) listed herein, in the above-mentioned case. I am over the age of 18, and not a party to or otherwise interested in this matter.

On **8/18/2026** at **01:40 PM,** I executed service of a **DISTRICT COURT CIVIL SUMMONS; COMPLAINT AND JURY DEMAND; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD-PARTY COMPLAINT AND JURY DEMAND; DELAY REDUCTION ORDER; PRETRIAL ORDER** on **Reynolds American Inc.** at **2626 Glenwood Ave, Suite 550, Raleigh, NC 27608.**

**By Corporate Service to: Heather Hughes - Customer Service Representative**

**Gender: Female Age: 35 Height: 5'5" Weight: 200 Race: Caucasian Hair: Brown**

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct.
Executed on 08/19/2026 at Raleigh, NC

**Rachel Cleve, Process Server**

**Work Order Id: 15569513-06**
**Client Reference: City and County of Denver v. Philip Morris USA Inc**

| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO**<br><br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>August 24, 2026 2:26 PM<br>FILING ID: ABA602D016B70<br>CASE NUMBER: 2026CV32869 |
| **Plaintiff:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>**Defendants:** PHILIPS MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲<br><br>Case No. 2026CV32869<br><br>Div.: |
| **Attorneys for Defendant Peerless Products, LLC:**<br>Ryan A. Williams (Reg. #34545)<br>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP<br>1225 17th Street, Suite 1700<br>Denver, Colorado 80202<br>(303) 572-5300 (Main)<br>(303) 573-5301 (FAX)<br>ryan.williams@wilsonelser.com; | |

**ENTRY OF APPEARANCE**

Ryan A. Williams, Esq., of the law firm Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby enters his appearance as counsel of record on behalf of Defendant Peerless Products, LLC. The undersigned respectfully requests that all further pleadings and other written documents in connection with this matter be forwarded to Ryan A. Williams, Esq.

Respectfully submitted this 24th day of August, 2026.

Wilson Elser Moskowitz Edelman & Dicker, LLP

*Original signature on file at offices of Wilson Elser Moskowitz Edelman & Dicker, LLP pursuant to C.R.C.P. 121 § 1-26*

*s/ Ryan A. Williams*
Ryan A. Williams, #34545
*Attorney for Defendant Peerless Products, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of August, 2026, a true and correct copy of the foregoing **ENTRY OF APPEARANCE** was filed with the Court via CCE and served to all parties of record.

*Original signature on file at offices of Wilson Elser Moskowitz Edelman & Dicker, LLP pursuant to C.R.C.P. 121 § 1-26*

*s/ Ann Potter*
Ann Potter

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED<br>August 26, 2026 11:21 AM<br>FILING ID: 5B15F5B2E1F92<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲**COURT USE ONLY**▲<br><br>Case Number: 2026CV32869<br><br>Courtroom: 215 |

**Attorneys for Plaintiff:**

Joseph J. Zonies, No. 29539
ZONIES LAW LLC
3900 Mexico Ave., Suite 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
GROSSMAN & KELLY, LLP
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
MCINTYRE SCHNIEDERS
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

**CERTIFICATE OF COMPLIANCE PER PRETRIAL ORDER**

As per the Pretrial Order dated August 7, 2026, I hereby certify that a copy of that Order was served via Process Server to the following Defendants on August 18-19, 2026:

1. Philip Morris USA Inc., Altria Group, Inc., Defendants, United Agent Group Inc., Registered Agent, 201 E. 4th Street, Loveland, CO 80537-5601

2. R.J. Reynolds Tobacco Company, Santa Fe Natural Tobacco Company, Inc., ITG Brands, LLC, Defendants, Corporation Service Company, Registered Agent, 1900 W. Littleton Blvd., Littleton, CO 80120

3. Reynolds American Inc., Defendant, Corporation Service Company, Registered Agent, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608

4. Liggett Group LLC, Liggett Vector Brands LLC, Defendants, CT Corporation System, Registered Agent, 7700 E. Arapahoe Rd., Suite 220, Centennial, CO 80112

In addition, a copy of the Delay Reduction Order was included in the service.

Dated: August 26, 2026

*s/ Joseph Zonies*
Joseph J. Zonies, Esq., No. 29539
**ZONIES LAW LLC**
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel. (720) 464-5300
Fax (720) 464-5357
jzonies@zonieslaw.com

Christopher Schnieders (KS No. 22434) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@grossmankelly.com
**GROSSMAN & KELLY, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City and County of Denver*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 26, 2026, a true and correct copy of this Certificate was filed and served via Colorado Court E-Filing on all counsel of record.

Additionally, a copy was served via U.S. Mail to the following:

Philip Morris USA Inc.
United Agent Group Inc., Registered Agent
201 E. 4th Street
Loveland, CO 80537-5601
*Defendant*

Altria Group, Inc.
United Agent Group Inc., Registered Agent
201 E. 4th Street
Loveland, CO 80537-5601
*Defendant*

R.J. Reynolds Tobacco Company
Corporation Service Co., Registered Agent
1900 W. Littleton Blvd.
Littleton, CO 80120
*Defendant*

Santa Fe Natural Tobacco Company, Inc.
Corporation Service Co., Registered Agent
1900 W. Littleton Blvd.
Littleton, CO 80120
*Defendant*

ITG Brands, LLC
Corporation Service Co., Registered Agent
1900 W. Littleton Blvd.
Littleton, CO 80120
*Defendant*

Reynolds American Inc.
Corporation Service Co., Registered Agent
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608
*Defendant*

Liggett Group LLC
CT Corporation System, Registered Agent
7700 E. Arapahoe Rd., Suite 220
Centennial, CO 80112
*Defendant*

Liggett Vector Brands LLC
CT Corporation System, Registered Agent
7700 E. Arapahoe Rd., Suite 220
Centennial, CO 80112
*Defendant*

*s/ Joseph Zonies*

<table>
<tr><td>DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300</td><td rowspan="2">DATE FILED<br>September 4, 2026 1:22 PM<br>FILING ID: AE5F048FF9E9E<br>CASE NUMBER: 2026CV32869<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>PLAINTIFF:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>DEFENDANTS:<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC</td></tr>
<tr><td>Attorneys for Defendants Philip Morris USA Inc.<br>Paul W. Rodney (Bar No. 41951)<br>Eliseo R. Puig (Bar No. 49022)<br>ARNOLD & PORTER<br>KAYE SCHOLER LLP<br>1144 Fifteenth Street, Suite 3100<br>Denver, CO 80202-2569<br>Phone: 303.863.1000<br>paul.rodney@arnoldporter.com<br>eliseo.puig@arnoldporter.com</td><td>Case Number: 2026CV32869<br><br>Courtroom.: 215</td></tr>
<tr><td colspan="2">MOVING DEFENDANTS' FORTHWITH UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT</td></tr>
</table>

Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Santa Fe Natural Tobacco Company, Inc. (collectively, "Moving Defendants"), by and through undersigned counsel, respectfully request an extension of time for all served defendants to answer or otherwise respond to the complaint.

## CERTIFICATE OF CONFERRAL

Moving Defendants conferred with Plaintiff regarding the relief requested in this Motion via email on September 3, 2026. Plaintiff consents to the requested extension.

## SUPPORTING REASONS FOR MOTION

1. On August 7, 2026, Plaintiff, the City and County of Denver ("the City"), filed this action in the District Court for Denver County, Colorado.

2. Pursuant to C.R.C.P 12(a)(1), Defendants must answer or otherwise respond to the City's complaint within 21 days of being served.

3. Moving Defendants[1] respectfully request that the deadline for any served defendant to answer or respond to the complaint be extended to 30 days after service of summons and the complaint.

4. Good cause exists for the extension. The Moving Defendants require additional time to evaluate the City's complaint and prepare meaningful responses.

5. This is the Moving Defendants' first request for an extension, it is made before the current response deadline, and it is not sought for purposes of delay. No case management order has entered and no trial date has been set, so the requested extension will not affect any other deadline or the orderly progress of this action. The City consents to the relief requested, and no party will be prejudiced by the extension.

6. A proposed order is attached.

[1] By joining this motion, the Moving Defendants expressly reserve and do not waive any available defense, including without limitation defenses related to service of process and personal jurisdiction.

DATED: September 4, 2026

Respectfully submitted,

/s/ *Eliseo R. Puig*
Paul W. Rodney (Bar No. 41951)
Eliseo R. Puig (Bar No. 49022)
ARNOLD & PORTER
KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
Phone: 303.863.1000
Paul.rodney@arnoldporter.com
eliseo.puig@arnoldporter.com

*Attorneys for Defendant Philip Morris USA Inc.*

/s/ *Michael D. Plachy*
Michael D. Plachy
Caitlin C. McHugh
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: 303-623-9000
Facsimile: 303-623-9222
Email: mike.plachy@wbd-us.com
caitlin.mchugh@wbd-us.com

/s/ *Patrick Haney*
Patrick Haney (pro hac vice forthcoming)
JONES DAY
51 Louisiana Ave N.W.
Washington, D.C. 20001
Telephone: 202.879.3939
Facsimile: 202.626.1700
Email: phaney@jonesday.com

*Attorneys for Defendants R.J. Reynolds Tobacco Company and Santa Fe Natural Tobacco Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, a true and correct copy of the foregoing **MOVING DEFENDANTS' FORTHWITH UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT** was served via *Colorado Courts E-Filing System* on the following:

Joseph Zonies
Zonies Law LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
jzonies@zonieslaw.com

*Counsel for Plaintiff*

Ryan A. Williams
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
ryan.williams@wilsonelser.com

*Attorney for Defendant Peerless Products, LLC*

*/s/ Eliseo R. Puig*

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300 | DATE FILED<br>September 4, 2026 1:22 PM<br>FILING ID: AE5F048FF9E9E<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF**:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>**DEFENDANTS:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲ |
| | Case Number: 2026CV32869<br><br>Courtroom.: 215 |

**[PROPOSED] ORDER GRANTING MOVING DEFENDANTS' FORTHWITH UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

The Court, having considered Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Santa Fe Natural Tobacco Company, Inc.'s (collectively, "Moving Defendants") Forthwith Unopposed Motion for Extension of Time to Respond to Complaint ("the Motion"), and being fully advised in the premises of the Motion, hereby ORDERS as follows:

1. The Court GRANTS the Motion.

2. All Defendants to this action shall answer or otherwise respond to Plaintiff's complaint within 30 days of being served with summons and the complaint.

BY THE COURT:

______________________________
District Court Judge

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | DATE FILED<br>September 4, 2026 1:59 PM<br>FILING ID: AD219D49BB842<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>**v.**<br><br>**DEFENDANTS**: PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | **▲ COURT USE ONLY ▲** |
| *Attorneys for Defendants R.J. Reynolds Tobacco Company and Santa Fe Natural Tobacco Company, Inc.*:<br><br>Michael D. Plachy, No. 22014<br>Caitlin C. McHugh, No. 45097<br>WOMBLE BOND DICKINSON (US) LLP<br>1601 19th Street, Suite 1000<br>Denver, CO 80202<br>Tel.: 303.623.9000<br>Fax: 303.623.9222<br>Email: mike.plachy@wbd-us.com<br>caitlin.mchugh@wbd-us.com | Case No.: 2026CV32869<br><br>Div.: 215 |

**ENTRY OF APPEARANCE**

Michael D. Plachy and Caitlin C. McHugh, of the law firm Womble Bond Dickinson (US) LLP, hereby enter their appearance on behalf of Defendants R.J. Reynolds Tobacco Company and Santa Fe Natural Tobacco Company, Inc. in the above-captioned matter. A motion to admit *pro hac vice* Patrick T. Haney of the law firm Jones Day is forthcoming.

Respectfully submitted this 4th day of September, 2026.

WOMBLE BOND DICKINSON (US) LLP

*s/ Michael D. Plachy*
Michael D. Plachy, No. 22014

*s/ Caitlin C. McHugh*
Caitlin C. McHugh, No. 45097

*Attorneys for Defendants R.J. Reynolds Tobacco Company and Santa Fe Natural Tobacco Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, a true and correct copy of the foregoing was filed and served via Colorado Courts E-Filing on all counsel of record at the time of this filing.

*s/ Lisa Elliott*
Of Womble Bond Dickinson (US) LLP

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED<br>September 8, 2026 11:52 AM<br>CASE NUMBER: 2026CV32869 |
| **Plaintiff(s)** C AND C OF DENVER<br>v.<br>**Defendant(s)** PHILIP MORRIS USA INC et al. | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2026CV32869<br>Division: 215 Courtroom: |

**Order:Moving Defendants' Forthwith Unopposed Motion for Extension of Time to Respond to Complaint**

The motion/proposed order attached hereto: GRANTED IN PART.

The Court is confused by this motion. First, it is labeled "forthwith", but does not state why there is urgency.

Second, it purports to seek an extension on behalf of "any served defendant", even though counsel has not entered an appearance for all such defendants.

Third, the requested extension is for 30 days after service, but without distinguishing what that date is. Generally, this Court will not set indefinite deadlines.

The Court grants an extension of 28 days from today for the 3 moving Defendants to file an answer or other response. The remaining 7 Defendants must seek their own relief.

Issue Date: 9/8/2026

A BRUCE JONES
District Court Judge

Attachment to Order - 2026CV32869

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300 | |
| **PLAINTIFF**:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>**DEFENDANTS:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲ |
| *Attorneys for Defendants Philip Morris USA Inc.*<br>Paul W. Rodney (Bar No. 41951)<br>Eliseo R. Puig (Bar No. 49022)<br>ARNOLD & PORTER<br>KAYE SCHOLER LLP<br>1144 Fifteenth Street, Suite 3100<br>Denver, CO 80202-2569<br>Phone: 303.863.1000<br>paul.rodney@arnoldporter.com<br>eliseo.puig@arnoldporter.com | Case Number: 2026CV32869<br><br>Courtroom.: 215 |

**MOVING DEFENDANTS' FORTHWITH UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Santa Fe Natural Tobacco Company, Inc. (collectively, "Moving Defendants"), by and through undersigned counsel, respectfully request an extension of time for all served defendants to answer or otherwise respond to the complaint.

Attachment to Order - 2026CV32869

## CERTIFICATE OF CONFERRAL

Moving Defendants conferred with Plaintiff regarding the relief requested in this Motion via email on September 3, 2026. Plaintiff consents to the requested extension.

## SUPPORTING REASONS FOR MOTION

1. On August 7, 2026, Plaintiff, the City and County of Denver ("the City"), filed this action in the District Court for Denver County, Colorado.

2. Pursuant to C.R.C.P 12(a)(1), Defendants must answer or otherwise respond to the City's complaint within 21 days of being served.

3. Moving Defendants[1] respectfully request that the deadline for any served defendant to answer or respond to the complaint be extended to 30 days after service of summons and the complaint.

4. Good cause exists for the extension. The Moving Defendants require additional time to evaluate the City's complaint and prepare meaningful responses.

5. This is the Moving Defendants' first request for an extension, it is made before the current response deadline, and it is not sought for purposes of delay. No case management order has entered and no trial date has been set, so the requested extension will not affect any other deadline or the orderly progress of this action. The City consents to the relief requested, and no party will be prejudiced by the extension.

6. A proposed order is attached.

[1] By joining this motion, the Moving Defendants expressly reserve and do not waive any available defense, including without limitation defenses related to service of process and personal jurisdiction.

DATED: September 4, 2026

Respectfully submitted,

/s/ *Eliseo R. Puig*
Paul W. Rodney (Bar No. 41951)
Eliseo R. Puig (Bar No. 49022)
ARNOLD & PORTER
KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
Phone: 303.863.1000
Paul.rodney@arnoldporter.com
eliseo.puig@arnoldporter.com

*Attorneys for Defendant Philip Morris USA Inc.*

/s/ *Michael D. Plachy*
Michael D. Plachy
Caitlin C. McHugh
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: 303-623-9000
Facsimile: 303-623-9222
Email: mike.plachy@wbd-us.com
caitlin.mchugh@wbd-us.com

/s/ *Patrick Haney*
Patrick Haney (pro hac vice forthcoming)
JONES DAY
51 Louisiana Ave N.W.
Washington, D.C. 20001
Telephone: 202.879.3939
Facsimile: 202.626.1700
Email: phaney@jonesday.com

*Attorneys for Defendants R.J. Reynolds Tobacco Company and Santa Fe Natural Tobacco Company, Inc.*

Attachment to Order - 2026CV32869

Attachment to Order - 2026CV32869

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, a true and correct copy of the foregoing **MOVING DEFENDANTS' FORTHWITH UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT** was served via *Colorado Courts E-Filing System* on the following:

Joseph Zonies
Zonies Law LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
jzonies@zonieslaw.com

*Counsel for Plaintiff*

Ryan A. Williams
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
ryan.williams@wilsonelser.com

*Attorney for Defendant Peerless Products, LLC*

*/s/ Eliseo R. Puig*

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock St.<br>Denver, CO 80202<br>Phone: (303) 606-2300 | DATE FILED<br>September 8, 2026 4:09 PM<br>FILING ID: C9D7BD2F6DCF3<br>CASE NUMBER: 2026CV32869 |
| **Plaintiff:**<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>**Defendants:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ **COURT USE ONLY** ▲ |
| ***Attorneys for Defendant ITG Brands, LLC***<br>Names: Paul D. Swanson, #50923<br>Hannah E. Berry #53990<br>Address: HOLLAND & HART LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80202-3921<br>Phone No.: 303.295.8000<br>E-Mail: PDSwanson@hollandhart.com<br>HEBerry@hollandhart.com | Case No. 2026CV32869<br><br>Div: 215 Ctrm: |

**ENTRY OF APPEARANCE**

Paul D. Swanson of Holland & Hart, LLP hereby enters his appearance on behalf of Defendant ITG Brands, LLC.

Dated September 8, 2026.

Respectfully submitted,

*s/ Paul D. Swanson*

Paul D. Swanson #50923
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295.8000
Email: PDSwanson@hollandhart.com
HOLLAND & HART LLP
***Attorney for Defendant ITG Brands, LLC***

## CERTIFICATE OF SERVICE

I certify that on September 8, 2026, I served a copy of the foregoing document to all counsel of record via the Colorado Court E-Filing Portal.

*s/ Antoinette Gonzales*
Holland & Hart, LLP

39399630

<table>
<tr><td>DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301</td><td rowspan="2">DATE FILED<br>September 8, 2026 2:25 PM<br>FILING ID: 290D74B67C2A0<br>CASE NUMBER: 2026CV32869<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>PLAINTIFF: THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>DEFENDANTS: PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC.</td></tr>
<tr><td>Attorneys for Defendants R.J. Reynolds Tobacco Company Santa Fe Natural Tobacco Company, Inc., and Reynolds American Inc.:<br><br>Michael D. Plachy, No. 22014<br>Caitlin C. McHugh, No. 45097<br>WOMBLE BOND DICKINSON (US) LLP<br>1601 19th Street, Suite 1000<br>Denver, CO 80202<br>Tel.: 303.623.9000<br>Fax: 303.623.9222<br>Email: mike.plachy@wbd-us.com<br>caitlin.mchugh@wbd-us.com</td><td>Case No.: 2026CV32869<br><br>Div.: 215</td></tr>
<tr><td colspan="2">ENTRY OF APPEARANCE</td></tr>
</table>

Michael D. Plachy and Caitlin C. McHugh, of the law firm Womble Bond Dickinson (US) LLP, hereby enter their appearance on behalf of Defendant Reynolds American Inc. in the above-captioned matter. A motion to admit *pro hac vice* Patrick T. Haney of the law firm Jones Day is forthcoming.

In entering counsel's appearance on behalf of Reynolds American Inc., Reynolds American Inc. denies this Court has personal jurisdiction over it and expressly reserves its ability to challenge personal jurisdiction in this matter.

Respectfully submitted this 8th day of September, 2026.

WOMBLE BOND DICKINSON (US) LLP

*s/ Michael D. Plachy*
Michael D. Plachy, No. 22014

*s/ Caitlin C. McHugh*
Caitlin C. McHugh, No. 45097

*Attorneys for Defendants R.J. Reynolds Tobacco Company, Santa Fe Natural Tobacco Company, Inc. and Reynolds American Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, a true and correct copy of the foregoing was filed and served via Colorado Courts E-Filing on all counsel of record at the time of this filing.

*s/ Lisa Elliott*
Of Womble Bond Dickinson (US) LLP

<table>
<tr><td>DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock St.<br>Denver, CO 80202<br>Phone: (303) 606-2300</td><td rowspan="2">DATE FILED<br>September 8, 2026 3:36 PM<br>FILING ID: 4DF9D391FB12A<br>CASE NUMBER: 2026CV32869<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>Plaintiff:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>Defendants:<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC</td></tr>
<tr><td>Attorneys for Defendant ITG Brands, LLC<br>Names: Paul D. Swanson, #50923<br>Hannah E. Berry #53990<br>Address: HOLLAND & HART LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80202-3921<br>Phone No.: 303.295.8000<br>E-Mail: PDSwanson@hollandhart.com<br>HEBerry@hollandhart.com</td><td>Case No. 2026CV32869<br><br>Div: 215 Ctrm:</td></tr>
<tr><td colspan="2">ENTRY OF APPEARANCE</td></tr>
</table>

Hannah E. Berry of Holland & Hart, LLP hereby enters her appearance on behalf of Defendant ITG Brands, LLC.

Dated September 8, 2026.

Respectfully submitted,

*s/ Hannah E. Berry*

Hannah E. Berry #53990
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295.8000
Email: HEBerry@hollandhart.com
HOLLAND & HART LLP
***Attorney for Defendant ITG Brands, LLC***

## CERTIFICATE OF SERVICE

I certify that on September 8, 2026, I served a copy of the foregoing document to all counsel of record via the Colorado Court E-Filing Portal.

*s/ Antoinette Gonzales*
Holland & Hart, LLP

39399016

<table>
<tr><td>DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300</td><td rowspan="2">DATE FILED<br>September 8, 2026 2:30 PM<br>FILING ID: A8AF728933B38<br>CASE NUMBER: 2026CV32869<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>PLAINTIFF:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>DEFENDANTS:<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC</td></tr>
<tr><td>Attorneys for Defendants Liggett Group LLC and Liggett Vector Brands LLC n/k/a JTI Liggett LLC<br><br>Maria Gorecki<br>KASOWITZ LLP<br>1911 11th Street, Suite 200<br>Boulder, Colorado 80302<br>Tel.: 720.932.8303<br>E-mail: mgorecki@kasowitz.com<br>Atty. Reg. #: 48109</td><td>Case Number: 2026CV32869<br><br>Courtroom.: 215</td></tr>
<tr><td colspan="2">ENTRY OF APPEARANCE OF COUNSEL FOR LIGGETT GROUP LLC AND LIGGETT VECTOR BRANDS n/k/a JTI LIGGETT LLC</td></tr>
</table>

Maria Gorecki of the law firm of Kasowitz LLP hereby enters her appearance as counsel of record for Defendants Liggett Group LLC and Liggett Vector Brands n/k/a JTI Liggett LLC.

Dated this 8th day of September 2026.

Respectfully submitted,

*/s/ Maria Gorecki*

Maria Gorecki, Atty. Reg. # 48109
KASOWITZ LLP
1911 11th Street, Suite 200
Boulder, CO 80302
Tel. 720.932.8303
mgorecki@kasowitz.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 8, 2026, a true and correct copy of the foregoing was served on all counsel of record by the Colorado Courts E-Filing System.

*/s/ Maria Gorecki*
Maria Gorecki

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300 | DATE FILED<br>September 8, 2026 3:43 PM<br>FILING ID: 64FD8D5D53FCC<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF**:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>**DEFENDANTS:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲ |
| *Attorneys for Defendant Altria Group, Inc.*<br>Paul W. Rodney (Bar No. 41951)<br>Eliseo R. Puig (Bar No. 49022)<br>ARNOLD & PORTER<br>KAYE SCHOLER LLP<br>1144 Fifteenth Street, Suite 3100<br>Denver, CO 80202-2569<br>Phone: 303.863.1000<br>paul.rodney@arnoldporter.com<br>eliseo.puig@arnoldporter.com | Case Number: 2026CV32869<br><br>Courtroom.: 215 |

**MOVING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Defendants Altria Group, Inc., Reynolds American Inc., ITG Brands, LLC, Liggett Group LLC, Liggett Vector Brands LLC n/k/a JTI Liggett LLC, and Peerless Products, LLC (collectively, "Moving Defendants"), by and through undersigned counsel, respectfully request an extension of time for all served defendants to answer or otherwise respond to the complaint.

## CERTIFICATE OF CONFERRAL

As noted in the motion filed September 4, 2026, Defendants conferred with Plaintiff regarding the request for an extension and Plaintiff consented to the request.

## SUPPORTING REASONS FOR MOTION

1. On August 7, 2026, Plaintiff, the City and County of Denver ("the City"), filed this action in the District Court for Denver County, Colorado.

2. Pursuant to C.R.C.P. 12(a)(1), Defendants must answer or otherwise respond to the City's complaint within 21 days of being served.

3. By Order earlier today, the Court granted a motion to extend the deadline to respond for Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Santa Fe Natural Tobacco Company, Inc. Moving Defendants file this motion pursuant to the Court's directive that "[T]he remaining 7 Defendants must seek their own relief."

4. Moving Defendants[1] respectfully request that their deadline to answer or respond to the complaint be extended to October 6, 2026 (28 days from today).

5. Good cause exists for the extension. The Moving Defendants require additional time to evaluate the City's complaint and prepare meaningful responses.

6. This is the Moving Defendants' first request for an extension and it is not sought for purposes of delay. No case management order has been entered and no trial date has been set, so the requested extension will not affect any other deadline or the orderly progress of this action.

---

[1] By joining this motion, the Moving Defendants expressly reserve and do not waive any available defense, including without limitation defenses related to service of process and personal jurisdiction. For the avoidance of doubt, Altria Group, Inc. and Reynolds American Inc. deny that this Court has personal jurisdiction over them and join this motion for the limited purpose of preserving their rights to raise this defense, and any others, at the time requested by this Motion.

The City consents to the relief requested, and no party will be prejudiced by the extension.

7. A proposed order is attached.

DATED: September 8, 2026

Respectfully submitted,

/s/ *Eliseo R. Puig*
Paul W. Rodney (Bar No. 41951)
Eliseo R. Puig (Bar No. 49022)
ARNOLD & PORTER
KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
Phone: 303.863.1000
Paul.rodney@arnoldporter.com
eliseo.puig@arnoldporter.com

*Attorneys for Defendant Altria Group, Inc.*

/s/ *Michael D. Plachy*
Michael D. Plachy
Caitlin C. McHugh
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: 303-623-9000
Facsimile: 303-623-9222
mike.plachy@wbd-us.com
caitlin.mchugh@wbd-us.com

*Attorneys for Defendant Reynolds American Inc.*

/s/ *Hannah E. Berry*
Paul D. Swanson, Reg No. 50923
Hannah E. Berry, Reg No. 53990
HOLLAND & HART LLP

555 17th Street, Suite 3200
Denver, CO 80202-3921
Phone: 303.295.8000
PDSwanson@hollandhart.com
HEBerry@hollandhart.com

*Attorneys for Defendant ITG Brands, LLC*

*/s/ Maria Gorecki*

Maria Gorecki # 48109
KASOWITZ LLP
1911 11th Street, Suite 200
Boulder, Colorado 80302
Phone: 720.932.8303
mgorecki@kasowitz.com

*Attorneys for Defendants Liggett Group LLC and Liggett Vector Brands LLC n/k/a JTI Liggett LLC*

*/s/ Ryan A. Williams*

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
ryan.williams@wilsonelser.com

*Attorney For Defendant Peerless Products, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 8, 2026, a true and correct copy of the foregoing **MOVING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT** was served via *Colorado Courts E-Filing System* on the following:

Joseph Zonies
Zonies Law LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
jzonies@zonieslaw.com

*Counsel for Plaintiff*

*<u>/s/ Eliseo R. Puig</u>*

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300 | DATE FILED<br>September 8, 2026 3:43 PM<br>FILING ID: 64FD8D5D53FCC<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF**:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>**DEFENDANTS:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲ |
| | Case Number: 2026CV32869<br><br>Courtroom.: 215 |

**[PROPOSED] ORDER GRANTING MOVING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

The Court, having considered Defendants Altria Group, Inc., Reynolds American Inc., ITG Brands, LLC, Liggett Group LLC, Liggett Vector Brands LLC n/k/a JTI Liggett LLC, and Peerless Products, LLC's (collectively, "Moving Defendants") Unopposed Motion for Extension of Time to Respond to Complaint ("the Motion"), and being fully advised in the premises of the Motion,

hereby ORDERS as follows:

1. The Court GRANTS the Motion.

2. Moving Defendants shall answer or otherwise respond to Plaintiff's complaint by October 6, 2026.

BY THE COURT:

______________________________

District Court Judge

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED<br>September 9, 2026 3:27 PM<br>CASE NUMBER: 2026CV32869<br><br>⚠ COURT USE ONLY ⚠ |
| **Plaintiff(s)** C AND C OF DENVER<br>v.<br>**Defendant(s)** PHILIP MORRIS USA INC et al. | Case Number: 2026CV32869<br>Division: 215 Courtroom: |

**Order:Moving Defendants' Unopposed Motion for Extension of Time to Respond to Complaint (filed on behalf of Deft Reynolds American INC, ITG Brands LLC, Liggett Group LLC, Liggett Vector Brands LLC, and Peerless Products, LLC)**

The motion/proposed order attached hereto: GRANTED.

Issue Date: 9/9/2026

A BRUCE JONES
District Court Judge

Attachment to Order - 2026CV32869

| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300 | |
| **PLAINTIFF**:<br>THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br>**DEFENDANTS:**<br>PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC | ▲ COURT USE ONLY ▲ |
| *Attorneys for Defendant Altria Group, Inc.*<br>Paul W. Rodney (Bar No. 41951)<br>Eliseo R. Puig (Bar No. 49022)<br>ARNOLD & PORTER<br>KAYE SCHOLER LLP<br>1144 Fifteenth Street, Suite 3100<br>Denver, CO 80202-2569<br>Phone: 303.863.1000<br>paul.rodney@arnoldporter.com<br>eliseo.puig@arnoldporter.com | Case Number: 2026CV32869<br><br>Courtroom.: 215 |

**MOVING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT**

Defendants Altria Group, Inc., Reynolds American Inc., ITG Brands, LLC, Liggett Group LLC, Liggett Vector Brands LLC n/k/a JTI Liggett LLC, and Peerless Products, LLC (collectively, "Moving Defendants"), by and through undersigned counsel, respectfully request an extension of time for all served defendants to answer or otherwise respond to the complaint.

Attachment to Order - 2026CV32869

**CERTIFICATE OF CONFERRAL**

As noted in the motion filed September 4, 2026, Defendants conferred with Plaintiff regarding the request for an extension and Plaintiff consented to the request.

**SUPPORTING REASONS FOR MOTION**

1. On August 7, 2026, Plaintiff, the City and County of Denver ("the City"), filed this action in the District Court for Denver County, Colorado.

2. Pursuant to C.R.C.P. 12(a)(1), Defendants must answer or otherwise respond to the City's complaint within 21 days of being served.

3. By Order earlier today, the Court granted a motion to extend the deadline to respond for Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Santa Fe Natural Tobacco Company, Inc. Moving Defendants file this motion pursuant to the Court's directive that "[T]he remaining 7 Defendants must seek their own relief."

4. Moving Defendants[1] respectfully request that their deadline to answer or respond to the complaint be extended to October 6, 2026 (28 days from today).

5. Good cause exists for the extension. The Moving Defendants require additional time to evaluate the City's complaint and prepare meaningful responses.

6. This is the Moving Defendants' first request for an extension and it is not sought for purposes of delay. No case management order has been entered and no trial date has been set, so the requested extension will not affect any other deadline or the orderly progress of this action.

---

[1] By joining this motion, the Moving Defendants expressly reserve and do not waive any available defense, including without limitation defenses related to service of process and personal jurisdiction. For the avoidance of doubt, Altria Group, Inc. and Reynolds American Inc. deny that this Court has personal jurisdiction over them and join this motion for the limited purpose of preserving their rights to raise this defense, and any others, at the time requested by this Motion.

The City consents to the relief requested, and no party will be prejudiced by the extension.

7. A proposed order is attached.

Attachment to Order - 2026CV32869

DATED: September 8, 2026

Respectfully submitted,

/s/ *Eliseo R. Puig*
Paul W. Rodney (Bar No. 41951)
Eliseo R. Puig (Bar No. 49022)
ARNOLD & PORTER
KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
Phone: 303.863.1000
Paul.rodney@arnoldporter.com
eliseo.puig@arnoldporter.com

*Attorneys for Defendant Altria Group, Inc.*

/s/ *Michael D. Plachy*
Michael D. Plachy
Caitlin C. McHugh
WOMBLE BOND DICKINSON (US) LLP
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone: 303-623-9000
Facsimile: 303-623-9222
mike.plachy@wbd-us.com
caitlin.mchugh@wbd-us.com

*Attorneys for Defendant Reynolds American Inc.*

/s/ *Hannah E. Berry*
Paul D. Swanson, Reg No. 50923
Hannah E. Berry, Reg No. 53990
HOLLAND & HART LLP

555 17th Street, Suite 3200
Denver, CO 80202-3921
Phone: 303.295.8000
PDSwanson@hollandhart.com
HEBerry@hollandhart.com

*Attorneys for Defendant ITG Brands, LLC*

*/s/ Maria Gorecki*

Maria Gorecki # 48109
KASOWITZ LLP
1911 11th Street, Suite 200
Boulder, Colorado 80302
Phone: 720.932.8303
mgorecki@kasowitz.com

*Attorneys for Defendants Liggett Group LLC and Liggett Vector Brands LLC n/k/a JTI Liggett LLC*

*/s/ Ryan A. Williams*

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
ryan.williams@wilsonelser.com

*Attorney For Defendant Peerless Products, LLC*

Attachment to Order - 2026CV32869

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, a true and correct copy of the foregoing **MOVING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT** was served via *Colorado Courts E-Filing System* on the following:

Joseph Zonies
Zonies Law LLC
3900 E. Mexico Ave., Suite 300
Denver, Colorado 80210
jzonies@zonieslaw.com

*Counsel for Plaintiff*

*/s/ Eliseo R. Puig*

Attachment to Order - 2026CV32869

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO**<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED<br>September 16, 2026 9:15 AM<br>FILING ID: C9854FA07F928<br>CASE NUMBER: 2026CV32869 |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; ALTRIA GROUP, INC.; R.J. REYNOLDS TOBACCO COMPANY; REYNOLDS AMERICAN INC.; SANTA FE NATURAL TOBACCO COMPANY, INC.; BRITISH AMERICAN TOBACCO P.L.C.; ITG BRANDS, LLC; LIGGETT GROUP LLC; LIGGETT VECTOR BRANDS LLC; and PEERLESS PRODUCTS, LLC. | ▲COURT USE ONLY▲<br><br>Case No. 26CV32869<br><br>Courtroom: 215 |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE NAMED DEFENDANT: British American Tobacco, PLC, Registered Agent, Globe House, 4 Temple Place, London WC2R 2PG**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated this 8th day of September 2026.

*s/ Joseph Zonies*

Joseph Zonies, No. 29539
ZONIES LAW LLC
3900 E. Mexico Ave., Ste. 300
Denver, CO 80210
Phone: (720) 464-5300
Fax: (720) 464-5357
jzonies@zonieslaw.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| DISTRICT COURT, COUNTY OF DENVER, COLORADO | |
|---|---|
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; et al. | DATE FILED<br>September 16, 2026 9:15 AM<br>FILING ID: C9854FA07F928<br>CASE NUMBER: 2026CV32869<br><br>Case No. 26CV32869 |

**Witness Statement of Service in accordance with sub paragraph (b) of Article 10, Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters**

I, **PAUL COTTEE**, Process Server, acting under the instructions of Across The Pond Process Service, of 94 Henwood Green Road, Pembury, TN2 4LN, England, say as follows:

1. In the matters detailed below I was acting as agent for Graham Henry Bridgman ("Mr Bridgman"), a Solicitor of the Senior Courts of England and Wales and thus a competent person within the meaning of article 10(b) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Convention").

2. Mr Bridgman was in turn acting upon the instructions of Aaron Dean Lukken of Viking Advocates, LLC, of Kansas City, Missouri, USA, an attorney, and thus a competent person of the State of origin within the meaning of article 10(b) of the Convention.

3. In this witness statement I refer to the following documents as "the Service Documents":

   - Hague Service Convention Warning and Hague Service Convention Summary of the Document to be Served ("the Hague Documents");
   - District Court Civil Summons;
   - Complaint and Jury Demand;
   - Form 1.2 District Court Civil (CV) Case Cover Sheet for Initial Pleading of Complaint, Counterclaim, Cross-Claim or Third Party Complaint and Jury Demand;
   - Delay Reduction Order; and
   - Pretrial Order.

4. Exhibited hereto marked 'A' are copies of the Hague Documents.

5. On Thursday the 10th day of September 2026 at 1.05 p.m., I served British American Tobacco P.L.C., one of the within named Defendants, with the Service Documents, by

delivering them to and leaving them at British American Tobacco P.L.C.'s Registered Office at Globe House, 4 Temple Place, London, WC2R 2PG, England, "the Service Address", which is a method of service in accordance with English Court rules. Under those rules, the deemed date of service is Monday the 14th day of September 2026.

6. On attending at the Service Address, I was directed to the Post Room, where I met with an adult male, who identified himself as "Alex". Alex accepted the documents on behalf of British American Tobacco P.L.C.

7. Service has been effected in accordance with a method prescribed by the internal law of England and Wales and also in accordance with Article 10(b) of the Convention.

**ADDITIONAL COMMENTS**

I certify that I am over the age of 18 and not a party to or interested in the above action. I have proper authority in the jurisdiction in which this service was effected.

**STATEMENT OF TRUTH**

I believe that the facts stated in this witness statement of service are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Dated: 11th September 2026

Signed: Paul Cottee

**PAUL COTTEE**

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF DENVER, COLORADO** | |
| **PLAINTIFF:** THE CITY AND COUNTY OF DENVER, a municipal corporation,<br><br>v.<br><br>**DEFENDANTS:** PHILIP MORRIS USA INC.; et al. | Case No. 26CV32869 |

---

**Exhibit A to the Witness Statement of PAUL COTTEE**

---

This is the exhibit marked "A" to my witness statement dated today.

Dated: 11th September 2026

Signed: *Paul Cottee*

**PAUL COTTEE**

'A'

# WARNING
AVERTISSEMENT

**Identity and address of the addressee** / Identité et adresse du destinataire

**British American Tobacco P.L.C.**
Globe House
4 Temple Place
London, England WC2R 2PG

**IMPORTANT**

**THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.**

**IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.**

**ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:**

TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE, SOIT DANS VOTRE PAYS, SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES À :

Legal Aid
1905 Sherman Street
Denver, Colorado 80203
Tel.: +1.720.941.0262

**It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.**

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'État d'origine de l'acte. Les blancs pourraient être remplis, soit dans la langue de l'État où le document doit être adressé, soit en langue française, soit en langue anglaise.

# SUMMARY OF THE DOCUMENT TO BE SERVED
ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).**
Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Name and address of the requesting authority:**<br>Nom et adresse de l'autorité requérante : | Aaron Lukken and Sarah Ginther, Attorneys<br>Viking Advocates, LLC<br>6525 Charlotte Street<br>Kansas City, Missouri 64131 USA<br>E.: attorneys@vikinglaw.us<br>Tel.: +1.816.683.7900 |

| | |
|---|---|
| **Particulars of the parties***:<br>Identité des parties* : | **Plaintiff:** City and County of Denver<br>**Defendants:** Philip Morris USA Inc.; Altria Group, Inc.; R.J. Reynolds Tobacco Company; Reynolds American Inc.; Santa Fe Natural Tobacco Company, Inc.; **British American Tobacco P.L.C.**; ITG Brands, LLC; Liggett Group LLC; Liggett Vector Brands LLC; Peerless Products, LLC |

* If appropriate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte

☒ **JUDICIAL DOCUMENT****
ACTE JUDICIAIRE**

| | |
|---|---|
| **Nature and purpose of the document:**<br>Nature et objet de l'acte : | To inform the defendants of a lawsuit against them, and to demand their answer at court. |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:**<br>Nature et objet de l'instance, le cas échéant, le montant du litige : | Plaintiff accuses the defendant of, *inter alia*, negligence. It seeks declaratory and injunctive relief, damages, costs, fees, and interest. |
| **Date and Place for entering appearance**:**<br>Date et lieu de la comparution** : | Within 35 days after service the addressee must enter an appearance at the Denver County District Court, 1437 Bannock Street, Denver, Colorado 80202. |
| **Court which has given judgment**:**<br>Juridiction qui a rendu la décision** : | No court has issued a judgment. |
| **Date of judgment**:**<br>Date de la décision** : | No court has issued a judgment. |
| **Time limits stated in the document**:**<br>Indication des délais figurant dans l'acte** : | 35 days after service. |

** if appropriate / s'il y a lieu



Generated by: HAGUE ENVOY